Schulte v. Meehan.

## Paul Schulte v. Frank Meehan et al.

### Gen. No. 13,221.

1. COMMISSIONS—*in action brought to recover, what does not show willingness of performance by alleged purchaser.*  A contract of exchange incompletely executed does not show willingness to perform by the alleged purchaser, where the form of the contract and the lack of the signatures thereto show that some of the conditions upon which the purchaser insisted could not be complied with.

2. COMMISSIONS—*what not essential to right to recover.*  Where a broker seeks to recover commissions in procuring an agreement to exchange properties, it is not essential that a valid and enforceable agreement be obtained.  It is enough if he secures a party ready, willing and able to make the exchange upon the terms required.

3. ISSUES OF FACT—*instructions should not exclude.*  An instruction should not exclude from the jury issues of fact upon which there is evidence entitled to be considered by the jury.

Assumpsit.   Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding.   Heard in this court at the October term, 1906.   Reversed and remanded.   Opinion filed April 29, 1907.

**Statement by the Court.** Appellant was plaintiff and appellees defendants in the trial court, and will be so referred to in this statement. The declaration is in assumpsit, and the defendants pleaded the general issue. There being no claim that the declaration is insufficient to support a verdict for the plaintiff, if warranted by the evidence, it is unnecessary to state its averments.

The plaintiff is a broker engaged in the business of selling and purchasing real property for others, and he claims that the defendants, Frank Meehan, Joseph Meehan and Ellen Meehan, employed him to exchange certain real property for other real property. On the trial the suit was dismissed against Ellen Meehan. The jury found for the defendants, plaintiff moved for a new trial and in arrest of judgment, and the court overruled said motions and rendered judgment on the verdict. Frank, Joseph, Ellen, Mary and John Meehan, who are brothers and sisters, are the owners in common of lot 27 in block 6 of Waller's subdivision of the northwest $\frac{1}{4}$ of the northwest $\frac{1}{4}$ of section 20, township 39, range 14, situated in Cook county, Illinois, at the corner of Blue Island avenue and Twelfth street in the city of Chicago. The property was improved and was encumbered by a mortgage to secure the payment in 1905 of $15,000 and interest. The plaintiff claims and testified that the defendants told him that they would exchange the equity in the property for vacant lots, and he brought them a proposition from Emmanuel Hogensen to exchange certain vacant lots in Cook county, particularly described in the record, for the equity in the Blue Island avenue property, which proposition the defendants, Frank and Joseph Meehan, accepted about August 1, 1902, and agreed to give plaintiff, as commission for his services, two of the Hogensen lots, situated on 97th street near Center avenue, in Austin, Cook county, Illinois, more fully described in the record. Plaintiff says that a day later he took to Meehan's store a contract for the exchange, which was prepared in his office, and Frank and Joseph Meehan signed, and got a lady to sign it. It appears from the evidence that Ellen Meehan was the lady who

signed. Plaintiff then took the contract to Emmanuel Hogensen, who read it over and asked plaintiff, "You think you can sell that property again for me?" and plaintiff said, "I will take a little time, we can switch it again later; that is good property," and he said, "Yes, that is good property," and signed the contract about August 13 or August 14. The contract is dated August 14, 1902, and purports, on its face, to be "by and between Frank Meehan, Joseph Meehan and Ellen Meehan, also John and Mary Meehan, of the city of Chicago of the county of Cook, and State of Illinois, party of the first part, and E. Hogenson, party of the second part," and provides for the conveyance by warranty deed, by the first parties to the second party, of their property, and for the conveyance by the second party to the first parties of his property, by like deed. The contract is signed by only three of the first parties, Frank, Joseph P. and Ellen Meehan, and by Emmanuel Hogensen. The contract was offered in evidence by the plaintiff's attorney, and, on objection by defendants' attorney that it was signed by only three of the owners, the court admitted it in evidence, subject to the objection, but subsequently excluded it.

Plaintiff testified that when he went to Meehan's store, which he says was about August 1, 1902, before the contract was signed, he asked for the names of all who were interested in the Meehan property, and was given all five names on a slip of paper, and that, when the Meehans signed the contract he asked what about the other two, and Mr. Meehan said that was all right, he would make the agreement for them and pay them in cash, and the three signing would divide the lots between them. After the contract was signed by Hogensen, plaintiff took it to his office. He says that, in about two weeks after Hogensen signed, he went to Hogensen's office and found Hogensen and Frank Meehan there, and asked how they were getting along with the deal, when Mr. Hogensen said his attorney and he had been looking over the abstract of the Meehan property, which had been furnished to him, and that there had to be a partition suit to get title to the property, and said to Meehan, "You

go and attend to that, Mr. Meehan," and Meehan said he would go and see Mr. Kraft, his attorney. Plaintiff says that three or four days later he saw Mr. Hogensen, who said to him, "Well, I am willing to make the deal if they give me clear title. I cannot take the property unless it goes through the court to get a clear title. I understand from Mr. Meehan that one of the family is in the insane asylum," and that, subsequently, Mr. Hogensen wrote to plaintiff that if the Meehans would not give him a clear title, they would not make the deal. The exchange of properties was not effected, and plaintiff says he applied to defendants for his commission, saying to them that they signed the contract, and it was their fault that the deal was not made, and they said they would not pay him commission, but that he had a chance to trade the property off, and if he could find another purchaser, they would pay him double commission. Plaintiff, in his cross-examination, testified that in June, 1902, Joe Meehan told him that he and his brother owned the property, and at that time, that is in June, 1902, he did not know that others were interested in it. Mr. Hogensen testified, in substance, that when plaintiff first brought the contract to him, after it had been signed by the defendants, he refused to sign it, saying that he did not want the 12th street property, and that, a little later, plaintiff called on him again, and told him that there was a druggist across the street from the Meehan property, who wanted to get it, and that the druggist owned a six flat building on Flournoy street near Kedzie, and witness could get that for the Meehan property, and witness said he knew whose that property was all right, that he would take that property; that plaintiff then went away, but afterward returned with the Meehan contract signed, and wanted him to sign it, and he then refused, but subsequently signed it on plaintiff's representation that the defendants were ready to back out, if he would not sign it. Mr. Hogensen testified, on cross-examination, that the real reasons why he was not willing to proceed with the contract were two: One, that he could not get title, and the other that Dahm, the druggist, with whom he conversed

about his Flournoy street property, was not willing to exchange it for the Meehan property.    Joseph P. Meehan testified, in substance, that he told plaintiff, in June, 1902, that they had a piece of property which they would trade or sell, and gave him the particulars, and that, when he came in one day and wanted a contract, witness told him that the defendants could not sign a contract right out, that they were only part owners of the interest; and he said he would like to get a contract signed by some of the owners, and that, afterwards, when defendants signed, witness told plaintiff they could only sign on condition that it was satisfactory to everybody.

Frank Meehan testified, in substance, that plaintiff came in and told him Hogensen would make the deal, and that he, plaintiff, would draft a contract, and for him and the rest to sign it and let the deal go through, and witness said he didn't care to sign, as he didn't know what the others would do, and couldn't give any assurance that they would sign, and plaintiff said, "Well, you sign it anyhow, and we will get Hogensen to sign it.    If the others are satisfied it will go through; if they are not satisfied, we will call it off."    I saw him later and he said that if we didn't sign the contract Hogensen would back out, that there was no obligation on our part unless all signed.    Subsequently I signed the contract.    About a month after signing I received a letter from my brother John, in substance, that he did not want any vacant property in exchange for his equity, and I notified plaintiff of this, and he said, "It don't make any difference anyhow; I will get you another deal."    Witness further testified that about three weeks after he signed the contract, he saw Mr. Hogensen and asked him why he didn't sign it, and he said he had not decided, that he could not make the deal unless he could make another that hinged on it, and that, when he told plaintiff of this, he said, among other things, "I don't think that he is going to do business.    I will get you a better deal."

Plaintiff testified, in rebuttal, that he did not say that the contract was not binding unless signed by all owners; or

that it made no difference whether or not the other owners signed.

After the defendants refused to pay plaintiff commission in respect to the proposed deal with Hogensen, he says he worked pretty nearly a year endeavoring to procure some one to agree to make an exchange for the Meehan property, and finally got an offer from a Mr. O'Hearn to exchange 48 vacant lots, pay $500 in money and assume the $15,000 mortgage, for the Meehan property, which offer Frank Meehan accepted, and the parties went to the office of Mr. Kraft, Meehan's attorney, to have a contract drafted, but as O'Hearn could not then furnish the legal description of his lots, they agreed to adjourn and return to Kraft's office the next day; but the Meehans did not return, and, in a few days, plaintiff learned from them that the property was sold for cash, and they refused to pay him any commission. Plaintiff further testified that, at the time of the O'Hearn offer, he, plaintiff, knew that Frank, Joseph, John, Ellen and Mary Meehan were all interested in the property, and that he talked only with Frank and Joseph about the deal. The following occurred in his examination:

Q. "You knew at that time that Mary Meehan, John Meehan, Joseph Meehan, Ellen Meehan and Frank Meehan had an interest in the property?" A. "Yes, I knew it after the first contract was signed."

Q. "And you also knew that the title was not good?"

A. "On John O'Hearn's deal, I know that, yes."

The exchange was not effected. Frank Meehan testified that Mr. Kraft told the plaintiff that defendants would not pay commission if the deal should not be consummated, and that, if Mr. O'Hearn was willing to put up $500 and take the chance on getting the property, an arrangement could be made; and O'Hearn said he was not putting up money and taking chances, and the meeting broke up in a row. Frank also testified that he told plaintiff he would have to take a lot for commission if the O'Hearn deal should go through, and plaintiff said, "That is all right, they are good lots."

CASTLE, WILLIAMS, LONG & CASTLE, for appellant.

J. HENRY KRAFT, for appellees.

MR. JUSTICE ADAMS delivered the opinion of the court.

Appellant's counsel contend that the court erred in exclud-
ing the contract signed by Frank, Joseph and Ellen Meehan
and Emmanuel Hogensen, and in instructing the jury to
disregard said contract in their consideration of the case.
Counsel say that the contract was admissible, "for the pur-
pose of showing that Hogensen was ready, willing and able
to make the trade therein agreed to, regardless of whether
such contract was executed so as to bind appellees or not."
The contract, in the body of it, purports to be with all the
Meehans, including John and Ellen Meehan, and provides,
"Frank, Joseph, Ellen, John and Mary Meehan doth hereby
agree to convey said party of the second part, his heirs or
assigns, by warranty deed from Frank, Joseph, Ellen, John
and Mary Meehan, the following described property, sit-
uated in the county of Cook and State of Illinois, to-wit":
Here follows a description of the Meehan property.  This
expresses a willingness to make the exchange on condition
that a deed shall be executed by all the Meehans, owners of
the property, conveying that property, and certainly is not
evidence of willingness to make the proposed exchange on
any less or other condition, as, for instance, to take a con-
veyance from Frank, Joseph and Ellen.

The contract was incomplete without the signatures of
all those named in the body of it as parties.   Russell v.
Annable, 109 Mass., 72; Barbour v. Burrows, 51 Cal., 404.

Appellant knew well that Hogensen was not willing to
agree to make the exchange unless all the Meehans would
agree to it; hence he asked Frank Meehan for the names of
all interested in the property, and put all their names in the
contract which was drafted in his office.   The fact that the
contract is not signed by John or Mary Meehan, or by
Frank or Joseph Meehan for them, corroborates the testi-
mony of Frank Meehan, that when the contract was pre-

32

sented to him for his signature by appellant, he said he did not care to sign it, as he did not know what the others would do, that he could not give any assurance that they would sign it, and that appellant then said to him, "You sign it anyhow, and we will get Hogensen to sign it. If the others are satisfied, it will go through; if they are not satisfied, we will call it off." Joseph Meehan also testified that, at the time he signed the contract, he told appellant that he would sign on condition that the contract would be satisfactory to everybody.

It appears from appellant's testimony that he took the contract to his office after Hogensen signed it, and it does not appear from the evidence that Hogensen saw it afterward before the proposed exchange fell through. Hogensen evidently signed the contract on the supposition that all the Meehans named as parties to it would also sign it, and this was a condition of his signing. Russell v. Annable, *supra*.

Appellant was evidently in haste to have the contract signed by some of the parties. He told appellees that if they would not sign, Hogensen would back out, and told Hogensen if he would not sign, the Meehans would back out.

We are of opinion that the court did not err in excluding the contract as evidence, or in instructing the jury to disregard it.

Counsel for appellant urge as error the giving of this instruction: "The court instructs the jury to disregard all the evidence offered in reference to what is known as the Hogensen deal." Appellant testified that when appellees refused to pay him any commission on the Hogensen deal, either Frank or Joseph Meehan, it does not appear which, said to him: "You have a chance to trade the property off. I will pay you, after a while, double commission, if you find another purchaser," and appellant says that, after that, he worked pretty nearly a whole year to find another person to take the property. The court, perhaps, gave the instruction in question on the theory that appellant abandoned all claim for commission on the Hogensen deal, and we think the jury

would have been fully warranted in so finding. But whatever may have been the court's reason for giving the instruction, we think it should not have been given. It was a question for the jury, on the evidence, whether the appellant was entitled to commission for his services in attempting to procure an agreement between Hogensen and appellees. It is argued that the following instruction, given at the appellees' request, is erroneous: "The court instructs the jury that, if from the evidence they believe that the minds of the parties, in reference to the O'Hearn deal, did not meet, and that no valid and binding contract was made between Frank Meehan, Joseph Meehan and O'Hearn, then, in that case, you should find the issues for the defendants." The theory of this instruction is that unless there was a valid contract in writing between Frank and Joseph Meehan and John O'Hearn for the exchange of the lands in question, or between appellees and Hogensen, which could be enforced, appellant could not recover commissions, even though there was a complete oral agreement between the parties for such exchange. We do not understand this to be the law in a case where the agent is not employed or empowered to procure an actual sale or exchange of property, and it could not be assumed by the court, in view of the evidence, that the employment of appellant required him to effect an exchange of the properties before he could claim commissions.

In Hersher v. Wells, 103 Ill. App., 418, the appellant submitted to the court an instruction to the effect that either the trade must have been consummated, or the contract must have been put in writing, so as to have been enforceable between the parties, and if such were not the fact, commissions were not earned. The court refused the instruction and the Appellate Court sustained the refusal, saying: "Under a contract of that kind, a real estate agent who finds a purchaser on the terms fixed by the owner of the property, such purchaser being ready, willing and able to take a conveyance and pay the purchase price, has earned his commissions," and the court held that the fact that the contract in question in the case involved an exchange of land, did not

affect the rule. Ib. 421. The law, as announced in the case cited is, as we think, fully settled by the decisions in this State. Pratt v. Hotchkiss, 10 Ill. App., 603; Goodridge v. Holladay, 18 ib., 363; McConaughy v. Mahannah, 28 ib., 169; Scott v. Stuart, 115 ib., 535; Carter v. Webster, 79 Ill., 435; Monroe v. Snow, 131 ib., 126, 136; Hafner v. Herron, 165 Ill., 242, 250–1.

In support of the instruction in question appellees' counsel relies on Wilson v. Mason, 158 Ill., 304. In that case the agent or broker claimed to have procured, as purchasers, the executors of the will of one Alfred Cowles, and claimed commissions for securing such proposed purchasers. There were two executors, and one of them signed, in his own name, as executor, a written agreement to purchase, and signed, also, the name of the other, executor by him. There was no proof that the executors had any power under the will to purchase land for the estate, nor any proof that the executor who signed had written authority to sign for his co-executor. The court held, in substance, that there being no proof that the executors were empowered by the will to purchase land, the broker had not procured purchasers who were able to purchase, and, therefore, he was not entitled to recover. No case has been cited in which it has been held that an agent employed to procure a purchaser for property, or a person willing to exchange properties, cannot recover commissions in the absence of a valid and enforceable written contract between the vendor and proposed vendee, or between the owners of property proposed to be exchanged.

In Wilson v. Mason, *supra,* the court, on the first page of the opinion, say: "The duty of a broker, who is employed to sell real estate, is to find and produce to the vendor a purchaser, who is ready, willing and able to complete the purchase. This he must do before he is entitled to any commissions."

In Hersher v. Wells, *supra,* the Appellate Court says the case of Wilson v. Mason does not abrogate the rule laid down in that case as to what will entitle a broker to commissions. 103 Ill. App., 421.

In Lawrence v. Rhodes, 188 Ill., 96, the court, after cit-
ing authorities to the effect that a broker is entitled to com-
missions when he has found a purchaser able, ready and
willing to complete the purchase on the terms proposed by
the vendor, say: "The cases of Wilson v. Mason, 158 Ill.,
304, and Leete v. Norton, 43 Conn., 219, especially relied
upon by appellee, are not in conflict with the authorities
above cited.   In both of these cases the contract of employ-
ment was that of an ordinary broker, in which it was not
expressly agreed a sale should be effected, as is the case here,
and the appellee did not present a purchaser to the appellant,
who entered into a 'valid, binding and enforceable contract,'
as he must have done in order to bring himself within the
rule as announced in the Wilson case, and it was expressly
ruled in the Leete case that no sale had been effected."   Ib.
102.   See, also, Fox v. Starr, 106 Ill. App., 273.

We find no reversible error in the admission of Frank
Meehan's testimony as to his conversation with Hogensen, or
to his testimony as to the contents of a letter from his brother
John.   We think, however, the latter evidence should have
been excluded.   Appellant does not claim to have been em-
ployed by John Meehan, but only by appellees.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*