## Jose Migneault, Appellant, v. Charles F. Gunther, Appellee.

### Gen. No. 16,994.

1. BROKERS—*commissions on lease.* Where an owner expressly stipulated that he would pay no commissions to a broker until a deal, the making of a ninety-nine year lease, went through, the broker is not entitled to commissions until a lease or valid contract to execute a lease is entered into between the owner and the party procured.

2. BROKERS—*terms that proposed lessee must meet.* Where an owner informs an experienced broker of the amount of rent and value of improvements that will be demanded on a ninety-nine year lease of valuable property, such terms do not constitute the entire advance terms; and a broker securing a party able, ready and willing to meet such terms is not entitled to commissions unless the proposed lessee enters into a binding agreement as to other particulars that are as essential to a ninety-nine year lease as the rent and buying of improvements.

Appeal from the Municipal Court of Chicago; the Hon. JOHN H. HUME, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed June 4, 1912.

T. F. MONAHAN, for appellant.

R. D. STEVENSON, for appellee.

MR. JUSTICE F. A. SMITH delivered the opinion of the court.

This action was brought in the Municipal Court of Chicago by plaintiff, a real estate broker, to recover commissions claimed to have been earned by him in negotiating for a ninety-nine year lease of the premises known as 212 State street, in the city of Chicago. The defendant, appellee, is the owner of the premises. It is not contended that the lease was in fact executed as a result of the plaintiff's exertions, but it is claimed that the plaintiff produced one P. M. Hanney, who was ready, willing and able to execute a ninety-nine year lease on terms claimed to have been stated by the defendant to the plaintiff. It is not suggested even by the plaintiff that anything further in the way of terms was mentioned than the amount of rental and the price to be paid for the improvements then on the premises. It appears that the value of the premises involved was about half a million dollars, and it is conceded that none of the many other provisions indispensable to a ninety-nine year lease were gone into when the plaintiff was employed. It also appears from the uncontroverted testimony that the agreement be-

tween the plaintiff and the defendant expressly stipulated that commissions were to be paid only if the proposed deal went through. It further appears that a sale of the business then carried on by the defendant on the premises in question was to constitute a part of the proposed deal, and it appears that none of the terms of that part of the transaction were discussed with the plaintiff. It seems to be the plaintiff's, appellant's, contention that the meager terms above mentioned constituted a full statement of the entire terms of the proposed lease, and that if he secured a party ready, willing and able to execute a ninety-nine year lease of the premises in question, and to pay the amount of rental mentioned, and the stated price for the improvements, he thereupon became entitled to his commissions, regardless of the fact that no lease was executed, and that the parties were unable to reach an agreement upon any of the remaining provisions indispensable to such a lease.

The plaintiff bases his case upon the claim that he in fact produced a party who was willing to execute a ninety-nine year lease of the premises, and to pay the amount of rental and the price for the improvements mentioned by defendant. The proposed lease failed of execution because the parties were unable to agree upon the other provisions of the lease.

The defendant, on the other hand, contends that nothing in the way of terms was stated which purported to be the complete terms of a proposed lease, or which the plaintiff was justified in believing to be such; that certain cardinal points only were mentioned without which negotiations could not have been opened with any possible lessee, but that those points constituted not even the skeleton of a lease, and that all the other terms were left to future negotiations between the parties, and, therefore, to entitle the plaintiff to commissions, it was necessary for him to show that the parties executed the lease or entered into a binding contract to do so.

The following facts are disclosed by the evidence: In the latter part of 1907, the plaintiff approached the defendant with reference to a ninety-nine year lease of the premises in question, and a sale of the defendant's business. Negotiations followed with a party by the name of Kranz, which were abandoned in December, 1907. Subsequently, in January, 1908, plaintiff suggested the name of P. M. Hanney to the defendant, and a conversation was held between them relative to commission and price. The testimony of the plaintiff and the defendant as to the amount of rental asked by the latter disagrees, plaintiff claiming that it was to be eighteen thousand dollars a year for five years, twenty thousand dollars a year for four years, and twenty-four thousand dollars a year for the remainder of the term, with thirty thousand dollars for the improvements. The defendant claims the amount of rental stated by him was twenty thousand dollars for four years, twenty-two thousand dollars for five years, and twenty-four thousand dollars for the remainder of the term. Mr. Hanney and the defendant had several conferences, and negotiated together until about April 23, 1908. It appears also that Mr. Hanney agreed to purchase the stock and the business then carried on at the premises in question, at a discount from the regular price. None of the other provisions of the lease were even discussed between them. Nothing except the amount of the rental was talked. Even the details as to time and place of payment of rent were not mentioned. No mention was made of taxes, insurance, disposition of improvements, and the many provisions of a ninety-nine year lease. Both parties said they expected a formal lease to be drawn which would provide for many things. Both testified they were not familiar with such leases, and both left the remaining provisions to their attorneys. The parties then consulted their respective attorneys, and gave directions to prepare the lease. Mr. Hanney consulted

with and was represented by Elbridge Hanecy, and the defendant was represented by Mr. John C. Richberg.

On May 19 following, a tentative draft of the lease was presented by Mr. Richberg to Judge Hanecy for his consideration. Certain objections were made by the latter, and on June 13 following a conference was held to discuss various points of difference between the parties. At that time Mr. Hanecy, on behalf of Mr. Hanney, objected to the fourth clause of the draft, which had reference to the sale of the candy stock of the defendant, the twelfth clause providing that all improvements on the premises at the expiration of the lease should revert to the lessor, and the nineteenth clause, containing provisions with reference to the lease being binding upon the assignees of the lessee. This conference ended in a disagreement without either party having changed his position. Nothing further was done in the matter until the 24th of June, at which time no agreement having been reached upon the draft, certain amendments and additions were prepared which were submitted to Mr. Hanecy. On July 2 and 3, 1908, conferences were had between the parties to the proposed lease and their attorneys, but the parties were unable to adjust their differences as to the terms and provisions of the lease, and negotiations were then and there definitely abandoned.

There is some claim made on behalf of the plaintiff, in the testimony, that the proposed lessee agreed to all clauses except the so-called condemnation clause, and that clause was first submitted in the amendment. The defendant contends that this claim is disproved by the preponderance of the evidence. But whether the clause was first submitted by the amendments is immaterial, since the former draft had not been agreed to or accepted, and the parties were only in negotiation on either side, and were at liberty to withdraw, retract or change their positions.

It is conceded by the defendant that he agreed to pay the plaintiff $6,000 as commissions, provided the deal went through. Had a lease been executed or had a valid contract to execute a lease been entered into between the parties, the plaintiff would have been entitled to commissions.

In our opinion the appellant did not earn the commission sued for, for the reason that no binding contract was executed between his client and the defendant, appellee. It is an undisputed fact in the case that appellee, the owner of the premises, at the time of the employment by him of appellant, expressly stipulated that he would pay no commission unless the deal went through. The defendant testified to this, and the witness Slyder, who was present, testified to the same thing. The plaintiff did not deny it, and his counsel in his brief, bases his argument upon that assumption of fact. So that it must be considered as clearly proven without contradiction on the record, that commissions were to be paid only in the event the deal went through.

The deal referred to was the making of a ninety-nine year lease. The language used, when applied to the subject-matter, clearly meant that the defendant would pay commissions when the lease was made. The same authorities and the law would therefore apply to this case as apply to a case where commissions are to be paid if a sale is made or effected.

Where it is an express condition to the payment of commissions that the sale be made, our Supreme Court holds that a binding contract of sale must be entered into between the owner and the proposed purchaser before any commissions are earned. In some states, it is held that the commission is not earned until an actual conveyance of the property is made, or where applied to a lease an actual execution of a lease.

The Supreme Court of this state has not gone to

that extent, however, but lays down the rule clearly that a binding contract of sale must be entered into. (Wilson v. Mason, 158 Ill. 304; Fox v. Ryan, 240 Ill. 391.)

The above authorities show conclusively that where it is a condition of the employment that a sale be made or a deal be effected, that condition must be complied with before the broker earns his commission; and that to comply with that condition it is necessary that a binding and enforceable agreement be entered into between the parties. The evidence shows in this case that no such agreement was entered into, verbal or otherwise. The evidence shows that the parties failed to come to any agreement as to the terms of the lease, other than the rental to be paid, the length of the term, and that defendant's stock was to be purchased at a discount from the regular price.

It is clear from the evidence that the plaintiff did not produce a party ready, able and willing to lease the premises in question.

The premises involved were valuable, as above stated. It cannot be supposed that appellant, who had been a real estate broker for twenty-five years, believed for one moment that the mere statement of amount of rental constituted a statement of the complete terms to be included in a ninety-nine year lease of such a valuable property. If the parties understood, as they did, that there were other terms such as a lease of that character necessarily contains, the statement of terms could not be considered as the final statement of what the lease was to contain.

In Rossiter v. Miller, 3d App. Cases, page 1151, Lord Blackburn said: "So long as they are only in negotiation, either party may retract; and though parties may have agreed upon all of the cardinal points of the intended contract, yet, if some particular essential of the agreement still remains to be settled afterward, there is no contract. The parties in such a case

are still only in negotiation.'' See also Hale v. Kumler, 29 C. C. A. 67.

Without doubt the statement of the rental was a cardinal point, but there were other particulars just as essential in the execution of a ninety-nine year lease which were not even mentioned, and which the plaintiff as well as the defendant well knew would have to be provided for, and accordingly the matter was referred to the respective attorneys of the parties for the preparation of the provisions of the proposed lease. This was clearly understood by both parties. Such terms could not be stated orally by the parties, and no attempt was made, as shown by the record, to state them. The provisions of the proposed lease were not therefore stated in advance, and it was impossible for the plaintiff to have produced a party ready, willing and able to lease upon the terms stated in advance, and such a doctrine has no application to this case. And yet appellant's theory is, as stated in the brief of his counsel, that appellant's contract was performed when he brought Gunther and Hanney to the point where they agreed upon the rental and terms. These terms, however, did not constitute the entire terms of the lease, and appellant could not earn his commissions by producing a party ready, willing and able to pay the price for improvements and the rental named unless he was also ready, willing and able to enter into a binding agreement with reference to the remaining terms of the lease, which are as essential and necessary as the terms and rental.

There can be but one conclusion from the testimony in the record, and that is, that the parties to the proposed lease did not reach even an oral agreement as to its material and essential terms.

The judgment of the Municipal Court is affirmed.

*Affirmed.*