## Arthur N. Glatt and Leslie M. Price, trading as Glatt & Price, Appellants, v. James Adams, Appellee.

### Gen. No. 27,043.

1. BROKERS—*acceptance of purchaser as fixing right to commission.* An owner of real property who employed brokers to procure a purchaser therefor on certain terms is liable to the brokers for their commissions where the evidence shows that they procured a purchaser who was ready, able and willing to buy on the owner's terms and who was accepted by the owner, that thereafter such purchaser's wife was substituted for him as the purchaser and was accepted by the owner, that she appeared at the time and place appointed for the execution of the contract, willing to execute the same and make the necessary payments due at that time and that the owner then refused to complete the contract although he had previously on several occasions signified his willingness to accept her as purchaser in lieu of her husband.

2. BROKERS—*failure of proposed purchaser to execute written contract as affecting right to commissions.* A broker's action for a commission cannot be defeated by the fact that no written contract was ever signed by the proposed purchaser, where the brokers had procured a purchaser ready, able and willing to buy on the owner's terms and who was accepted by the owner, and where further performance was prevented by the owner's failure to appear at the time and place appointed for closing the deal.

Appeal from the Municipal Court of Chicago; the Hon. HOSEA W. WELLS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1921. Reversed and remanded. Opinion filed October 18, 1922.

ISIDORE VISE, for appellants; DOUGLAS C. GREGG, of counsel.

ADAMS & WHITE, for appellee; B. F. RICHOLSON, of counsel.

MR. JUSTICE TAYLOR delivered the opinion of the court.

The plaintiffs brought suit for commissions in the

sum of $540 for producing a buyer of certain premises. The trial judge held that the plaintiffs were not entitled to recover.

The evidence is substantially as follows: In January, 1920, the defendant, James Adams, listed the property known as 6806 Cornell avenue, Chicago, with the plaintiffs, Glatt and Price, for sale, requesting them to find a purchaser. They were duly licensed real estate brokers. On January 27, 1920, James Adams notified the plaintiffs that he would be willing to sell the property for $18,000, to be paid for as follows: $6,000 in cash, the purchaser to assume a mortgage which was then on the property for $7,500, and the purchaser to give a second mortgage on the property for $4,500, to be paid in monthly instalments of $75, with interest, the brokers to receive a commission of three per cent on the selling price of $18,000. On January 28, 1920, the plaintiffs obtained one Ben Hirsch to sign a written proposition of purchase. That writing recited that on January 28, 1920, Ben Hirsch had deposited $500 to apply on the contract of purchase of 6806 Cornell avenue; that the price was $18,000; that the terms were $6,000 cash; second mortgage of $4,500 payable $75 monthly with interest, and the assumption of a mortgage of $7,500.

On January 29, 1920, the defendant, James Adams, indorsed, on the foregoing writing, the following: "I hereby accept the above with the provision that I am to give only a contract for a warranty deed," the deed to be delivered only after his interest had been fully paid up. The indorsement was signed, "James Adams." On the same date the defendant Adams together with one Bernbach, an employee of the plaintiffs, prepared a typewritten agreement, embodying all the terms and conditions of a sale to Hirsch, and providing that the purchaser was to receive a warranty deed when the $4,500 and interest was fully paid. Five days later, on February 3, the defendant,

James Adams, was informed by the plaintiffs that Hirsch, the purchaser, desired to have the title to the property taken in the name of his wife, Sophie Hirsch. Bernbach testified that Adams said it would be all right as far as he was concerned, and Price testified that Adams said that that was all right, that the contract was just the same as he had given them the day before.    The plaintiffs then drafted a new contract substituting the name of Sophie Hirsch for that of Ben Hirsch. On the same day it was shown to Adams, a copy left with him, and an appointment made with him to meet them and Sophie Hirsch at the office of one Louis Grollman, her attorney, at the Harris Trust Building at 3:00 p. m. the following Friday, to receive the balance of the cash payment, being $5,500, and close the deal. Adams said he would be there at the appointed time to receive the money and sign the contract.    At 3:00 p. m. on the following Friday, Mr. and Mrs. Hirsch, Price and the employee Bernbach went to the office of Grollman to close the deal. Mrs. Hirsch had with her the $5,500 to complete the cash payment. Adams failed to keep his appointment.    Shortly afterwards Price went to the United Trust Company, where he met Adams, and asked him why he had not appeared to close up the matter.    Adams then requested Price to see him that evening at his office on Stony Island avenue.    Price and Bernbach called twice that afternoon at Adams' office, and later, about 9:30 p. m., at his home.    They also called upon him on Saturday morning, and he then told them he would not go on with it, as he had a better one.

Sophie Hirsch testified that she had the contract, took it to her lawyer, and then told Bernbach that it was all right and then made the appointment to meet and close up the deal on the Friday in question; that she went there and had $5,700 with her, although the balance was only $5,500; that she waited there with the others; that she was and is ready, willing and able to go on with the purchase.

The trial judge held that the evidence did not show that Adams was satisfied with the financial responsibility of Sophie Hirsch; that, although Adams agreed to sell to Ben Hirsch on the terms set forth, apparently being satisfied with him, the evidence did not show that he agreed to accept the wife as a purchaser and, therefore, he was not liable to the plaintiffs for having produced a purchaser.

We think the trial judge erred. In the course of the negotiations, after a tentative contract of sale had been made between Adams and Ben Hirsch, and after he was told that the purchaser preferred to have the title run to his wife, Sophie Hirsch, Adams said that would be all right. That is testified to by Price and Bernbach, and there is no evidence to the contrary. Certainly it is not reasonable, now, to allow him to repudiate the normal effect of his own overt acts. A purchaser had been presented who was ready, willing and able to take and pay for the property. No question arose as to the solvency of Sophie Hirsch. Adams waived that when with full knowledge of what had transpired, he said he would accept Sophie Hirsch as buyer instead of Ben Hirsch. As she was ready, able and willing, and appeared pursuant to agreement with Adams at the appointed place, he may not now, 'the brokers having furnished a purchaser, repudiate their complete service, and deny all responsibility for the expressly promised commission. *Newman v. Lumley,* 125 Ill. App. 382; *Joice v. Norman,* 192 Ill. App. 285; *Fox v. Ryan,* 240 Ill. 391; *Monroe v. Snow,* 131 Ill. 127; *Hersher v. Wells,* 103 Ill. App. 418; *Schultz v. Meehan,* 133 Ill. App. 491; *Goodridge v. Holladay,* 18 Ill. App. 363; *Rushkiewicz v. St. George, ante,* p. 310.

It is claimed by counsel for the defendant that because no written contract was signed by Sophie Hirsch, there is no liability on him for real estate commissions. A signed contract, however, was unnecessary. The plaintiffs earned their commission when

they produced Mrs. Hirsch, ready, able and willing to buy the property. Where an owner of real estate employs a broker to sell it for him, whether for a fixed commission or a customary charge, it is a promise on the part of the owner to pay the broker for his services whenever the broker produces a prospective purchaser ready, willing and able to buy. It is a unilateral contract and the promise of the obligor, the owner, ripens into a fixed obligation and liability the moment the broker has rendered his services by producing a prospective purchaser ready, able and willing to buy. When the broker has furnished the prospective buyer who is ready, willing and able to buy, the contract is executed as far as the broker is concerned. In the instant case the plaintiffs produced not only a purchaser ready, willing and able to buy pursuant to the terms of the seller, but one he was satisfied with, and so earned their commission, even though as a matter of fact no actual written contract of sale was signed.

In the instant case, inasmuch as the evidence shows that Adams accepted Ben Hirsch as a purchaser and subsequently Sophie Hirsch in his stead, no question could thereafter arise when Adams was sued for commission as to the ability of Sophie Hirsch to comply with the terms of the contract. As Mr. Justice Farmer said in *Fox v. Ryan,* 240 Ill. 391: "The vendor of property is not required to accept a purchaser without opportunity for investigation as to his ability to comply with the terms of the contract, but where he does accept such purchaser, uninfluenced by fraud or misrepresentation, it is a determination by him of the purchaser's ability to perform his contract, and if the purchaser afterwards fails to perform it, the seller cannot defeat the broker's commissions on the ground that the purchaser was not able to buy the property."

Inasmuch as the judgment was entered, apparently on the motion of the defendant, at the close of the plaintiffs' evidence, no evidence on the part of the defendant having been introduced, the cause will be remanded for a new trial.

<em>Reversed and remanded.</em>

THOMSON, P. J., and O'CONNOR, J., concur.