The Consolidated Trading Corporation, Appellant, v. Michael Roth, Trading as Advance Storage Company, Appellee.

Gen. No. 45,378.

Opinion filed November 27, 1951. Released for publication January 3, 1952.

James W. Milne and Otto W. Berg, both of Chicago, for appellant.

Cusack & Cusack, of Chicago, for appellee; James J. Cusack, Jr., John F. Cusack, and Robert E. Cusack, all of Chicago, of counsel.

Mr. Justice Schwartz delivered the opinion of the court.

Plaintiff, appellant, sues to recover a commission for the sale of 40,000 pairs of used shoes owned by defendant. Plaintiff claims it was employed to sell these shoes for a commission equal to the excess of the purchase price over 45 cents a pair; that it procured a buyer, Vispa Trading Corporation, which offered to purchase the entire amount of shoes at 60 cents a pair; that this buyer was accepted by defendant and a binding agreement entered into between seller and buyer; that thereby defendant became liable to plaintiff for the amount of $6,000; that defendant has paid plaintiff the sum of $700 and plaintiff has owing to it the sum of $5,300. Defendant admits the employment of the agent to find a buyer; admits that plaintiff procured Vispa Trading Corporation as a buyer, and admits that he entered into a contract with Vispa Trading Corporation. His defenses are twofold: first, that under a proper interpretation of the contract, plaintiff was to receive a commission only on those shoes

actually sold and paid for, and second, that the contract did not bind Vispa Trading Corporation to buy all the 40,000 pairs of shoes, but only as many as on inspection were acceptable to it.

The court tried the case without a jury, at its conclusion decided all issues in favor of defendant, and found that plaintiff was only entitled to that excess over 45 cents per pair which was actually received by defendant. Vispa Trading Corporation had paid defendant $8,213 and on that basis plaintiff was entitled to $2,053.25. However, the court went further and deducted from $8,213, $2,200 paid by defendant to Vispa Trading Corporation in settlement of a suit against him, leaving a total net cash of $6,013, on which plaintiff's commission was computed as $1,503.25. Plaintiff having received $700, the court gave it judgment for $803.25. It is from this judgment that plaintiff appeals.

It is the law of this State that in the absence of any provision to the contrary, a broker engaged to procure a buyer performs his contract when he presents a purchaser who is accepted by seller and with whom seller thereupon makes a valid contract. In such case the broker has earned his commission, although the sale is never actually completed. *Wilson v. Mason,* 158 Ill. 304; *Fox v. Ryan,* 240 Ill. 391; *Rushkiewicz v. St. George,* 226 Ill. App. 310; *Cunningham v. Cagney,* 330 Ill. App. 244; *Glatt v. Adams,* 226 Ill. App. 321; *Greene v. Hollingshead,* 40 Ill. App. 195.

However, where it appears that performance of an executory contract was a condition precedent to the right of a broker to receive his commission, the courts have not hesitated to enforce such a provision. Thus, in the case of *Burnett v. Potts,* 236 Ill. 499, seller and a broker entered into an agreement whereby the seller was to receive $35,000 net for the sale of property and the broker to receive as his commission

153

all above that amount. The agent negotiated a contract for the sale of the property for $37,500. Only $1,000 was paid down as earnest money. Purchaser made default under his contract and never paid anything except the $1,000. The court so construed the contract as requiring payment to the principal of $35,000 before the agent would be entitled to any commission.

In *Nudelman v. Wildes,* 160 Ill. App. 134, plaintiff's broker entered into a contract with his principal, whereby property was to be sold for $16,287.50 "net to the sellers" and expressly providing that sellers were not to pay any commission. Plaintiff procured a purchaser for the sum of $17,200. It appeared, however, that frontage on the premises represented by sellers to be 50 feet was upon examination found to be only 44 feet. The prospective purchaser objected to this discrepancy and endeavored to get sellers to consent to an appropriate rebate. Sellers refusing to do so, purchaser declined to take the property, not only on account of the discrepancy in frontage but because of various other alleged objections to the title. Purchaser sued for and recovered his deposit. In the suit by the agent, however, the court held that even though sellers were thus guilty of having breached their contract of sale, nevertheless, the agent was not entitled to any commission, the court construing the contract as providing for receipt by seller of the purchase price before any commission was to be paid the agent. The same general principle is stated in *Migneault v. Gunther,* 171 Ill. App. 311.

██ ██ The first question therefore is whether the contract of agency between plaintiff and defendant provided that commission was to be paid only on those shoes actually sold and paid for, rather than on those contracted to be purchased. The complaint averred that in the event "the plaintiff found or produced a

purchaser for all of the said shoes, the defendant would pay to the plaintiff as its compensation for its said services an amount equal to the excess over 45 cents per pair of shoes that the purchaser, so produced by the plaintiff would agree to pay for all of the said shoes." This allegation by plaintiff was admitted by defendant. However, oral and documentary evidence was adduced on this point by both parties, and the issue was not treated as if entirely settled by the pleadings. We will, therefore, consider the material evidence on this point. On January 10, 1947, defendant wrote plaintiff as follows:

"We, the Advance Storage Company, agree to pay you a commission on the shoes purchased from us. Our price for these shoes are to be $.45 per pair, and all over this price is to be given to you."

Defendant testified that he told Lampert, agent of plaintiff, that he would take 45 cents a pair for the shoes, and plaintiff could have as its commission any excess over 45 cents on the entire lot. Lampert testified in substance: "Mr. Roth said *that he had to have a certain amount of money,* I think it was 45 cents a pair. My commission would be whatever I could get above 45 cents." (Emphasis ours.) On April 1, 1947 plaintiff wrote to defendant, enclosing an invoice for $2,120.40 commission earned, that being computed on the basis of 14,136 pairs of shoes sold and delivered by defendant to Vispa Trading Corporation. This invoice credited defendant with $126.60 remaining unpaid on some shoes, and the letter also stated that if defendant recovered the purchase price of the shoes from Vispa Trading Corporation the amount of $126.60 would be due. The letter referred to a suit which plaintiff and defendant contemplated bringing against Vispa Trading Corporation to force it to accept the additional shoes. The memorandum of January 10, 1947, and the

conversations and dealings of the parties subsequent thereto can be construed as contemplating payment to the principal of 45 cents for each pair of shoes before plaintiff was entitled to any commission. This contemporaneous construction placed by the parties upon their contract is entitled to great weight. *Nye v. Foreman*, 215 Ill. 285; *People ex rel. City of Chicago v. Schreiber*, 322 Ill. App. 452; *People v. Rosehill Cemetery Co.*, 371 Ill. 510; *Village of Broadview v. Toman*, 309 Ill. App. 485; *Chicago Title & Trust Co. v. Central Republic Trust Co.*, 299 Ill. App. 483. We cannot say that the manifest weight of the evidence on this point is in favor of plaintiff.

██ The second ground of defense is that the contract between Vispa Trading Corporation and defendant was not a binding contract for the sale and purchase of 40,000 pairs of shoes, but it is argued by defendant that Vispa Trading Corporation was not obligated to purchase all the shoes. Most of the record in this case is made up of testimony and evidence on this point. Plaintiff's position at the trial seems to have been that a firm and binding contract was made between Vispa Trading Corporation and the seller, whereby Vispa would take the entire 40,000 pairs of shoes; that the agent was able to negotiate this sale as a result of the exhibition by defendant of three pairs of shoes, as characteristic of the entire lot, and that the sale was made subject to this representation. Plaintiff has "implored" the court to look at Exhibits 10 and 11. We have looked at the shoes in these exhibits, but are not impressed by counsel's argument. The fact is that Vispa Trading Corporation on January 9, 1947 advised seller that it would purchase all the shoes provided they pass inspection, and they asked to inspect 1,200 pairs. The shoes were delivered under this arrangement, and some were returned. Plaintiff apparently

recognized this right on the part of the buyer to reject shoes, and submitted a bill for shoes which was computed on the basis of shoes actually accepted and paid for. One of plaintiff's officers inspected many of the shoes. Considering the small price paid for the shoes, we can understand why the trial court would hesitate to believe there was a representation with respect to their condition. We cannot say with respect to this point that the manifest weight of the evidence is against the finding of the court.

█ Following the making of the contract between Vispa Trading Corporation and defendant, a dispute arose concerning the quality of the shoes, which culminated in a suit by Vispa Trading Corporation against defendant, claiming damages in the sum of $7,589.50 because of the breach of the contract by defendant. This suit was settled by defendant's paying to Vispa Trading Corporation $2,200. In determining plaintiff's compensation, that amount was deducted by the trial court from the total amount which had theretofore been paid by seller to buyer. There was no justification for this deduction. The agent was entitled to a commission of $2,053.25, of which $700 has been paid, leaving a balance of $1,353.25. The lower court entered judgment for only $803.25. That judgment is reversed and judgment is entered here for $1,353.25.

*Reversed and judgment here for $1,353.25.*

Tuohy, P. J. and Robson, J., concur.