43   219
75   163

## HARVEY B. LEETE *vs.* NELSON S. NORTON.

The plaintiff, a real estate broker, having in his hands certain property of the defendant for sale or exchange, arranged for an exchange with *C*, and a contract was executed by *C* and the defendant by which each was to take immediate possession of the other's property, and on or before a day fixed was to convey his property to the other by warranty deed; and if either should fail to perform he was to pay the other five hundred dollars as liquidated damages. *C* failed to perform, without fault on the part of the defendant. Held that the plaintiff was entitled to his commission.

The defendant having agreed to accept five hundred dollars in lieu of performance, would not be allowed to deny, as against the plaintiff, that that payment was equivalent to performance.

And held that it did not affect the case that *C* had not in fact paid the money to the defendant.

ASSUMPSIT to recover commissions as a real estate broker; brought to the Court of Common Pleas of New Haven County, and tried to the court on the general issue. The court found the following facts.

The plaintiff, on the 10th day of May, 1871, and for some time before, was a real estate broker in the city of New Haven. Norton on that day placed in his hands for sale or exchange a certain piece of real estate in New Haven. Soon after, Uriah Clinton placed in his hands for sale or exchange a certain piece of land in Woodbridge. The plaintiff negotiated between Clinton and Norton and effected an agreement between them for the exchange of their respective properties. This agreement was duly executed, under seal, and was as follows:

"It is agreed between Nelson S. Norton, of the city of New Haven, of the one part, and Uriah Clinton, of the town of Woodbridge, of the second part, in manner following, viz.:

"That on or before August 12th, 1871, in consideration of the conveyance and sale to said Norton, by the said Clinton, of the land and buildings in Woodbridge hereinafter mentioned, the said Norton will sell and convey by a good warranty deed, legally sufficient for that purpose, to said Clinton, and give said Clinton a good, clear and unencumbered title to, and the peaceable and full possession of, a certain piece of land, with the dwelling-house and all buildings thereon, situated in said city of New Haven, bounded [describing it]; also that he will before said 12th day of August next complete and paint, with two good coats of paint, the fence in front of said premises, and make a slat fence on the sides of said lot, and complete said house with two good coats of paint.

"In consideration of which the said Uriah Clinton promises and agrees to sell and convey to said Norton, on or before said 12th day of August next, and give him by a warranty deed a good, clear and unencumbered title to, and the peaceable and full possession of, a certain tract of land, with the hotel buildings and all other buildings thereon, situated in said town of Woodbridge, containing fourteen acres, more or less, now occupied by said Clinton as his homestead and hotel, bounded [describing it].

"It is agreed that each of said parties shall take possession of the other's property herein agreed to be conveyed immediately, and have the exclusive possession thereof free of rent

or other charge until August 12th, 1871. Also that each party will continue the present insurance upon his property until the deeds are exchanged, and in case the buildings are injured or destroyed by fire, that what may be due on the policies shall be paid to the party who is to receive a deed of the property burned, under this agreement, and this agreement shall remain in full force notwithstanding such fire.

" It is further mutually agreed by said parties that if either of them shall neglect or refuse to perform the promises and agreements binding upon him as hereinbefore mentioned, he shall pay to the other on demand the sum of five hundred dollars as liquidated damages, and also refund to the other what he may have expended on the other's property on the strength of this agreement to improve the same. In testimony whereof, &c."

Clinton failed to fulfill the terms of the agreement, and the trade was not consummated between them, without fault of Norton.

Upon these facts the plaintiff claimed to recover his commission, on the ground that he had done all that as a broker he could do when he had brought the parties to an agreement to sell.

The defendant claimed that, to entitle the plaintiff to recover, the sale must actually have been effected and the respective properties duly transferred.

The court reserved the case for the advice of this court.

*L. E. Munson,* for the plaintiff.

1. There is no claim that the services were not rendered —that they were not valuable—that the defendant has not profited by them—that the sum charged was unreasonable— or that it should not have been paid if the deeds had been passed. The record shows that Norton placed in Leete's hands, for sale or exchange, his property in New Haven; that Leete negotiated and *effected* an agreement between Norton and Clinton for an exchange of their properties, and that they entered into an agreement and reduced it to writing. That agreement provides that each party shall have immediate

possession of the other's property, free of rent, that policies of insurance shall in case of fire inure to the benefit of the purchasing party, and that if either party refuses to execute his deed he is to pay to the other $500 as liquidated damages.

2. The duty of the broker was ended, and his right to compensation complete, when the parties came together and closed the contract between themselves. *Glentworth* v. *Luther*, 21 Barb., 145; *Barnard* v. *Monott*, 34 id., 93; *S. C.*, 42* N. York, 203; *Doty* v. *Miller*, 43 Barb., 529; *Erben* v. *Lorillard*, 41* N. York, 567; *Cook* v. *Fiske*, 12 Gray, 491; *Shepherd* v. *Hedden*, 29 N. Jersey, 341; *Holly* v. *Gosling*, 3 E. D. Smith, 262; *Lincoln* v. *McClatchie*, 36 Conn., 136; *Drury* v. *Newman*, 99 Mass., 256; *McClave* v. *Payne*, 2 Sweeny, 407; *Mooney* v. *Elder*, 56 N. York, 238; *Redfield* v. *Tegg*, 38 id., 212.

3. The extension of time for the delivery of deeds was their act, not the broker's; he had no control over that part of the transaction. For certain reasons best known to themselves, they chose to extend the time for their delivery, and mutually stipulated that either party might be discharged on payment to the other of $500 as liquidated damages. Clinton preferred to pay the forfeit, rather than make the exchange. Suppose the liquidated damages had been fixed at $10,000, and the defendant had, by the plaintiff's work solely, procured the right to demand and to recover from Clinton that amount for a breach of this contract. Would not our sense of right be shocked by a suggestion that the broker had not earned his money? But the amount of the damages fixed does not alter the legal character of the transaction. The suit being against Norton, who had the benefit of the forfeiture, the claim is *equitable as well as legal*. The actual passing of the deeds is not essential to the contract of sale; the land is considered already transferred in equity, when the parties change their legal relations to it, and each enters into possession and enjoys its benefits to the exclusion of the original owner.

*C. Ives*, for the defendant.

The defendant placed his property in the plaintiff's hands

"for sale or exchange." The plaintiff did not secure either a sale or an exchange of the property, and therefore did not earn, nor was he entitled to receive, any commission. The most that he did was to secure a written promise from a third party to exchange other property for the defendant's; which promise, without the fault of the defendant, this third party refused to perform.

1. The contract of brokerage is of the nature of what in the civil law is called an aleatory contract—the payment depending upon an uncertain event. In the expectation of being able to realize a large compensation for his services by securing a sale, the broker takes the risk of getting nothing for his time and labor if he is unsuccessful in securing a consummated sale. He cannot therefore recover upon a *quantum meruit* for obtaining a party who makes an agreement to purchase, for this is only one step taken towards accomplishing the result upon which his commission depends. *DeSanto* v. *Taney*, 13 Louis. An. R., 151.

2. It has been held in some cases that where the broker has procured a person to agree to purchase property on the terms authorized by the owner, and the latter has refused to convey his property, the broker was not even then entitled to recover his commission, because this right to decline existed, and the broker undertook to find a purchaser in view of the happening of such a contingency, and took his chances. *Broad* v. *Thomas*, 4 Car. & P., 346; *Power* v. *Kane*, 5 Wis., 265.

3. It has been held in other cases, that where the failure to consummate a sale negotiated by a broker is owing to the fault or misconduct or the refusal to convey of the owner, the broker is entitled to his commission; as in *Cook* v. *Fiske*, 12 Gray, 491. It is believed that a case can not be found in which the broker has been held entitled to a commission when a sale has not been in fact consummated, unless the owner of the property has himself caused the proposed sale to be given up.

4. It is well settled in Great Britain and in the United States that the broker has not earned and is not entitled to a

commission when he has merely secured for his employer a contract of sale; and that he is not entitled to recover anything for his services, if the party agreeing to purchase refuses ultimately to do so without the fault of the owner of the property to be sold. *McGavock* v. *Woodlief*, 20 How., 221; *Kock* v. *Emmerling*, 22 id., 69; *Keener* v. *Harrod*, 2 Maryl., 63, 71; *Kimberly* v. *Henderson*, 29 id., 512; *Richards* v. *Jackson*, 31 id., 250; *Budd* v. *Zoller*, 52 Misso., 238; *Dalton* v. *Irwin*, 4 Car. & P., 289; *Broad* v. *Thomas*, 7 Bing., 99; *Read* v. *Rann*, 10 Barn. & Cress., 438; *Wells* v. *Smith*, 3 Louis., 501; *Levistones* v. *Landreaux*, 6 Louis. Ann. R., 26; *Lestrade* v. *Perrera*, id., 398.   The New York *Daily Register* for Nov. 10th, 1875, has published the following report of a case just decided by the New York Court of Appeals: "The defendant advertised his farm for sale, and the plaintiff, a real estate broker, offered his services to procure a sale or exchange of the farm for the usual commission of 2½ per cent.   Defendant told him to 'see what he could do,' placing his price at $45,000.   Plaintiff brought defendant several propositions for exchange, one of which (Martin's) he finally accepted, and a contract was signed.   The price of defendant's farm by the contract was $60,000.   Defendant afterwards refused to complete the exchange, on the ground of a defect in Martin's title, and plaintiff sued for 2½ per cent. commission on $45,000. A referee rendered judgment for the amount claimed, and the General Term affirmed the judgment, holding that Martin's title not having been produced, or the defect stated, that question could not be passed upon, and in the absence of evidence on that point, the broker, having apparently fulfilled his contract, was entitled to his commissions.   The Court of Appeals has now reversed the order of the General Term, and ordered a new trial."   This case, it will be seen, is the counterpart of the present one.   Its decision places New York on this subject in line with the other states and countries whose courts have been called upon to declare the law concerning brokers' commissions, where the broker fails to make a sale, and only succeeds in securing a contract which is broken without the fault of the owner of the property to be sold.

FOSTER, J.   On the 10th of May, 1871, the defendant placed in the hands of the plaintiff, who was a real estate broker, a piece of real estate for sale or exchange.   Soon afterwards, Uriah Clinton placed in the hands of the plaintiff a certain other piece of real estate, also for sale or exchange. The plaintiff negotiated between Clinton and the defendant, and effected an agreement between them for the exchange of their respective properties.   This agreement was reduced to writing, duly executed, and makes part of the record.   Clinton failed to perform the agreement on his part, and so without the fault of the defendant the exchange of the estates, as agreed, was not made.

The plaintiff claims to recover his commissions as if the sale or exchange had been consummated.   The defendant resists payment because the object for which he employed the plaintiff, and on which his compensation depended, has not been attained.   Whether or not the plaintiff is entitled to recover, is the question reserved for the advice of this court.

On examining the contract entered into by the defendant and Clinton, dated the 16th of June, 1871, we find that it was mutually understood and agreed between them that each should immediately take possession of the other's property, described in the contract, and have the exclusive possession of the same, free of rent or other charge, until the 12th of August, 1871; and that on or before that day each of the parties should convey to the other, in consideration of the other's conveying to him, their said several pieces of real estate; thus exchanging the same.   There were certain stipulations as to improvements to be made on one of the pieces of property, and certain arrangements as to the policies of insurance, &c., which it is unnecessary to consider.

Now had this contract been consummated—had Clinton given the defendant a conveyance of his property, and received from the defendant a deed of his in exchange, according to the agreement, it cannot be doubted that the plaintiff would have been entitled to the commissions now demanded.   And for the conclusive reason that he would have done just that, and all that, which the defendant employed him to do; just

that and all that which he undertook to do. The defendant would have obtained a property more valuable, in his estimation, than the one with which he had parted; so much more valuable that he preferred paying the plaintiff the compensation demanded for negotiating the contract which enabled him to obtain it.

In looking a little further into this agreement, we find that for the sum of five hundred dollars the defendant was willing, and for that sum he agreed, to discharge Clinton from his obligation to perform this contract. These are the words: "It is further mutually agreed by said parties that if either of them shall neglect or refuse to perform the promises and agreements binding upon him as hereinbefore mentioned, he shall pay to the other on demand the sum of five hundred dollars as liquidated damages."

Now though the plaintiff has not effected a sale or an exchange of the defendant's property, yet he has negotiated a contract for such exchange; agreed to by the defendant, in which contract a sum of money is specified which the defendant agrees to accept, and in consideration of which to relieve Clinton from his obligation to make the exchange of properties. Having thus fixed on the sum of five hundred dollars as an equivalent for the performance of this contract to exchange his property, as between himself and his co-contractor, the defendant cannot be allowed to deny that that sum of money is an equivalent, as between himself and the plaintiff, by whose aid he made the contract.

Whether this sum of money has been received or not does not appear. If it has not been received, means of enforcing payment are at hand. Both on legal and equitable grounds we think the plaintiff is entitled to recover. True, he has not effected an exchange of the defendant's property. Clinton failed to perform the contract, electing, in lieu of performance, to pay, or be compelled to pay, the defendant five hundred dollars, agreed and pronounced by the defendant to be equivalent to performance. The plaintiff then, having rendered services for the defendant, which he agrees are an equivalent to procuring an exchange of his property, is fairly entitled to

the same compensation as he would have been entitled to had the exchange been effected.

We advise the court below to render judgment for the plaintiff for the amount named.

In this opinion the other judges concurred.