G. HARRY ABBOTT *vs.* JOSEPH P. LEE.

Third Judicial District, Bridgeport, October Term, 1912.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

A real-estate broker is not entitled to recover his commission, unless he either makes a sale, or procures a customer who is ready and willing to buy the property on the terms prescribed by the owner.

In the present case the defendant property-owner signed a memorandum of the terms upon which he would sell, but the customer declined to take the property because the owner would not warrant his shore front to be at least fourteen hundred and fifty feet. The memorandum gave the boundaries of the property, but not the frontage in feet, though the owner had previously said, during the early oral negotiations and in response to a question, that his shore front embraced between fourteen and fifteen hundred feet. *Held* that under these circumstances the broker was not entitled to his

commission, since he had failed to procure a person who was willing to purchase the property in accordance with the terms upon which the broker was authorized to sell it.

The customer submitted a counter memorandum which included the warranty respecting the fourteen hundred and fifty feet of shore front, to which the owner would not agree. *Held* that the owner was under no obligation to prepare and present any other or further proposal.

Oral negotiations for a sale of real estate are presumed to have been merged in a memorandum, subsequently drawn, which purports to set forth the terms upon which the owner agrees to sell.

A statement of the owner of property as to the length of his shore front is immaterial, provided it is obviously a mere expression of opinion.

Statements in the nature of admissions made by a duly authorized attorney to the court during the trial of a case, if not conclusive as to the facts stated, are at least to be treated as admissions of his client, and therefore as evidence of the facts so admitted.

Argued October 29th—decided December 19th, 1912.

ACTION by a real-estate broker to recover the amount of his commission, brought to and tried by the Superior Court in Fairfield County, *Burpee, J.;* facts found and judgment rendered for the plaintiff for $1,713, and appeal by the defendant. *Error and new trial ordered.*

The complaint alleges that on or about the 23d of December, 1909, the defendant employed the plaintiff to procure a purchaser for a certain tract of land consisting of thirty-seven acres, more or less, with the buildings thereon standing, situated on Sasco Hill in Fairfield, and promised to pay him therefor $1,650; that the plaintiff procured such purchaser, ready and willing to buy upon the terms prescribed by the defendant; and that the defendant has refused to pay the plaintiff said sum.

The trial court has found these facts: Prior to 1909 the plaintiff, a real-estate broker, was informed by one Poillon that he would like to buy some property on the shore of Long Island Sound, in the vicinity of Stamford. Having learned that the defendant and his three sisters were the owners of such property, and desired to sell

the same, the plaintiff visited said premises, in company with Mr. Poillon's wife and daughter, and they were shown over the property by one of the defendant's sisters, the defendant himself not being at home. On the same evening the defendant informed the plaintiff that he and his sisters would sell the property for $35,000, and authorized the plaintiff to sell it at that price, and promised to pay him therefor a commission of five per cent.

Two or three days later the plaintiff visited the property with Poillon and others, and met the defendant, and the defendant pointed out to them certain objects indicating approximately the limits of the shore front, and in response to a question by Poillon stated that the length of the shore line was between fourteen and fifteen hundred feet; and two days later Mr. Poillon told the plaintiff that he would accept the defendant's terms and buy the property, and that he might close the bargain with the defendant accordingly.

The finding of facts states that "at this time Mr. Poillon was ready, willing and able to buy the defendant's property upon the terms fixed by the defendant, and had the means at his command for that purpose," and that he so notified the defendant, but that "the defendant then refused to sell the property upon said terms, stating that his sisters were unwilling to sell the dwelling-house and the home lot, containing about one acre."

A short time afterward the defendant told the plaintiff to tell Poillon that he would allow a reduction of $2,000 from the original price of $35,000, and retain the dwelling-house and home lot, and this proposition was presented by plaintiff to Poillon, and accepted by the latter, and the plaintiff at once informed the defendant of such acceptance, and it was then agreed between the plaintiff and the defendant that the former should

receive $1,500 for selling the property for said price, and the defendant agreed to pay the same.

On the 23d of December, 1909, the plaintiff wrote, and the defendant and his sisters signed, plaintiff's Exhibit A, which reads as follows: "Received from G. Harry Abbott, agent, the sum of fifty ($50.00) dollars to bind agreement to sell to J. E. Poillon all that certain tract or tracts of lands located on Sasco Hill (so-called) in the town of Fairfield, County of Fairfield, State of Connecticut, comprising thirty-seven (37) acres, more or less, as described in deeds as follows: Eliza M. Jennings to Patrick Lee, dated Apl. 5, 1888, recorded Vol. 65, page 411; Ebenezer Burr and wife, recorded July 18th, 1893, Vol. 67, page 594; Charles Jennings, Adm., to Patrick Lee, recorded Nov. 1st, 1898, Vol. 69, page 95, except for house standing thereupon, and one (1) acre of ground. It is understood that the purchase price is thirty-three thousand ($33,000) dollars, payable ($2,500.00) on signing of contract. Ten thousand, five hundred dollars and a mortgage for $20,000.00 @ 5% per annum upon delivery of deed on April 1st, 1910."

The plaintiff showed this paper to Poillon, who then gave the plaintiff $500 in part payment of the purchase price required by the terms of said writing, "and to make the contract binding." Which sum is still kept by the plaintiff, except that he gave his own check to the defendant for $50 as above indicated.

In January, 1910, Mr. Poillon prepared a written contract (plaintiff's Exhibit E) which provided that the defendant agreed to sell to Poillon and the latter agreed to purchase for $33,000 the premises described as containing thirty-seven acres, more or less, with the buildings thereon, excepting one acre of land with the buildings thereon, and further described by the boundaries, supposed to be in accordance with those described

in the three deeds referred to in Exhibit A, the south-westerly boundary being described in said Exhibit E as "the waters of Long Island Sound at highwater mark," and the westerly by "Mill River, so called." Added to such description in Exhibit E was the following language, not contained in the deeds referred to in Exhibit A, "together with all shore and riparian rights in said Sound and river. It being expressly agreed and warranted that the shore line on said Long Island Sound shall not be less than fourteen hundred and fifty (1450) feet in length."

No length of the shore line, by number of feet, was given in the deeds referred to in Exhibit A.

The defendant refused to sign Exhibit E. No contract, other than Exhibit A, embodying any change in the language of Exhibit E, was ever submitted to Mr. Poillon, and no sale of the property to Poillon was made.

The finding of facts contains these paragraphs: "30. The defendant did not offer or make any attempt in any way to carry out the agreement for the sale of his property made by him on December 23, 1909. 31. Mr. Poillon was ready, willing and able at all times to fulfill his part of the agreement Exhibit A, and on several occasions between December 23, 1909, and April 1, 1910, he made efforts to communicate with the defendant and to induce him to make the contract for sale and execute the deed mentioned in Exhibit A, and complete the transfer of the property, but without success. 32. The defendant refused and neglected to make any contract for sale of the property and to make any conveyance thereof to Mr. Poillon and it was his fault that the sale was not consummated. . . . 34. It did not appear how long the shore line or shore front of this property is, and no evidence was offered to show that the description of the land contained in Exhibit E

is not a correct description of the land referred to in Exhibit A."

Upon the facts found the trial court rendered judgment for the plaintiff for $1,713.25.

The defendant excepted to the finding as made in paragraphs 30, 31, 32 and 34, and also as made in other paragraphs of the finding, and asked for a correction thereof. The evidence respecting the facts so found is certified to this court.

*Robert E. DeForest* and *Thomas M. Cullinan,* for the appellant (defendant).

*Robert A. Fosdick,* for the appellee (plaintiff).

HALL, C. J.   To entitle the plaintiff to recover, he was required to prove the averment of his complaint, that he procured a "purchaser ready and willing to buy upon the terms prescribed by the defendant." To do this in the present case he was required to prove that Poillon was ready and willing to accept a conveyance of the property, and to pay the agreed price for it, in accordance with the terms fixed by the defendant, or that Poillon was ready and willing to enter into an enforceable contract to do so. *Leete* v. *Norton,* 43 Conn. 219, 226; *Schlegal* v. *Allerton,* 65 Conn. 260, 32 Atl. 363; *Clark* v. *Thompson & Son Co.,* 75 Conn. 161, 52 Atl. 720.

It is conceded that the conveyance was to be by warranty deed.

The complaint does not properly describe the property to be conveyed, or the sum to be paid to the plaintiff. By the final agreement the dwelling-house and one acre of land was to be excepted from the property first proposed to be sold, and the sum to be paid the plaintiff was fixed at $1,500.

The only property which the plaintiff was finally authorized by the defendant and his sisters to sell, was that described in the deeds referred to in Exhibit A, an instrument which was prepared by the plaintiff himself, was signed by the defendant and his sisters, and was also shown to Mr. Poillon.

It is expressly stated in Exhibit A, that the tract or tracts of land to be sold to Mr. Poillon (excepting the house and one acre of land) were "as described in deeds as follows."   Following this statement in Exhibit A, are the names of the parties to said deeds, the respective dates upon which the deeds were executed, and the volumes and pages where they are recorded.

From this language of Exhibit A, the plaintiff as well as Poillon, to whom it was shown, were clearly informed just what property was to be conveyed by the defendant and his sisters, and how the "tract or tracts" to be conveyed were to be described in the deed of conveyance.

In view of this language of Exhibit A, the defendant, unless he has modified the terms of Exhibit A, was not required, either by any agreement with the plaintiff or with Poillon, to execute any contract to sell, or any deed of conveyance to Poillon, containing any materially different description of the property or rights conveyed or to be conveyed, from those described in Exhibit A, and the deeds therein referred to, or to execute any contract or deed agreeing to warrant any title to any property or right, not included in the descriptions of property and rights contained in Exhibit A, or in said described deeds.

The plaintiff, however, claims that the description of the property to be conveyed, as contained in Exhibit A, was modified and changed by the statement of the defendant, as found to have been made to Poillon, and in the presence of the plaintiff, that the length of the

shore line was between fourteen and fifteen hundred feet. But this was not a statement that it was fourteen hundred and fifty feet long. That it was over fourteen hundred and less than fourteen hundred and fifty feet long would have been consistent with such statement; and proof that such statement was made before the defendant and his sisters had signed the writing, Exhibit A, in which previous negotiations are presumed to have been merged, render the statement inadmissible to alter the writing. Furthermore, it is perfectly apparent that such statement was, as the trial court ruled, but the expression of an opinion by the defendant

Regarding the questions of the willingness of Poillon to contract to purchase the property in question, or to accept a deed of the same in accordance with the terms of Exhibit A, and of the defendant's unwillingness to make such a contract, or to execute such a deed, which questions the trial court decided adversely to the defendant in paragraphs 31 and 32 of the finding, there seems to have been no conflict of evidence.

Poillon never signed or offered to sign Exhibit A.

The plaintiff testified that the $500 paid to him after Exhibit A was signed, was to be paid to the defendant "upon the signing of the contract," and that it was not paid to the defendant because the contract was never signed.

We find no evidence that Poillon was willing to sign any other contract to purchase the property than Exhibit E, or that he was ever willing to accept a deed of the property which did not contain a warranty that the length of the shore line was fourteen hundred and fifty feet. The plaintiff testified that the property he was negotiating to sell was the property as described in the deeds named in Exhibit A. Poillon, as a witness for the plaintiff, testified that the basis upon which he calculated to buy the property was the memorandum,

Exhibit A, *and the representations made by defendant as to the length of the shore line;* that the memorandum, Exhibit A, was shown, but that he was buying it upon representations; and that the negotiations terminated because the defendant would not sign the contract, Exhibit E.

The position of the plaintiff, and his claim as to the evidence, is made quite clear by the following statements of his own counsel, made to the trial court during the trial: The Court. " . . . but Mr. Poillon hasn't testified that he is ready to take the land described in those three deeds [the deeds named in Exhibit A]." Mr. Fosdick. "No, your Honor." The Court. "And I infer that he isn't. Is he?" Mr. Fosdick. "He is not. He stated that he is not. He stated that he was willing to take the land described in those three deeds in connection with the representations which had been made by Mr. Lee to him regarding the distance along the shore. . . ." The Court. "The question is, have you got a purchaser ready to buy that land." Mr. Fosdick. "The evidence is that we have.. He testified he was——" The Court. "What land?" Mr. Fosdick. "The land described in these deeds with 1450 feet of shore front. . . ." The Court. "Do you also claim that the statements made in regard to the shore front were untrue. . . ." Mr. Fosdick. "Certainly." The Court. "And that that is the reason why Mr. Poillon has not gone ahead with the contract?" Mr. Fosdick. "Certainly. He hasn't got anything like the shore front that he represented." The Court. "Then the court is at liberty to interpret the testimony given as meaning that Mr. Poillon has not found the quantity of land there he expected?" Mr. Fosdick. "That is precisely it." The Court. "Therefore he is not willing and ready to buy the land described in those deeds [the deeds named in Exhibit A] without any reference to

outside statements." Mr. Fosdick. "Oh, he never was willing to buy the land described in those deeds unless a survey showed that the distance along the shore was equal to that which was represented the man owned." The Court. "And the survey doesn't show that?" Mr. Fosdick. "Certainly not; doesn't show it."

Even if the court was not bound to accept these statements of counsel as conclusive upon the questions of fact to which they related, yet, as admissions of a duly-authorized attorney, made to the court during the trial of a case, they were to be treated as admissions of his client, the plaintiff, and were to be considered as in the nature of evidence of the facts so admitted. *Oliver* v. *Bennett*, 65 N. Y. 559; *Wilson* v. *Spring*, 64 Ill. 14; *Marsh* v. *Mitchell*, 26 N. J. Eq. 497; *Perry* v. *Simpson Waterproof Mfg. Co.*, 40 Conn. 313; 1 Greenleaf on Evidence, § 186.

After refusing to sign Exhibit E, the defendant was not required to prepare and present another contract, which he would sign. The contract or conveyance which he was willing to sign was sufficiently stated in Exhibit A, and the burden rested upon the plaintiff to prove that he had procured a purchaser ready to sign a contract to buy the property or to accept a deed of it, upon the terms there stated. The evidence clearly shows that the purchaser procured was only willing to sign a contract or accept a deed which contained a materially different description of the property to be conveyed from that contained in Exhibit A, and which imposed upon the defendant an obligation of warranting the length of the shore line to be fourteen hundred and fifty feet, which was not contained in Exhibit A, and which he had never agreed to assume.

The court erred in finding the facts as stated in paragraphs 31 and 32 of the finding, as they were not supported by the evidence, and in not finding the fact,

which was proved, that the plaintiff failed to procure a person who was willing to purchase the property in accordance with the terms upon which the plaintiff was authorized to sell it.

As there must be a new trial, it is unnecessary to consider other claimed errors.

There is error and a new trial is ordered.

In this opinion the other judges concurred.