JOHN McHUGH v. LOUISE BOCK ET AL

COURT OF COMMON PLEAS        FILE No. 9460
JUDICIAL DISTRICT OF WATERBURY

Memorandum filed July 22, 1947.

*Hugh J. McGill,* of Waterbury, for the Plaintiff.

*Albert J. Bronsky* and *John D. Thoms,* of Waterbury, for the Defendants.

FITZGERALD, J. On June 18 the trial of this action commenced against the named defendant and her son Otto Bock. In view of the granting of a nonsuit in favor of the latter defendant upon the resting of the plaintiff's case, the named defendant hereinafter will be referred to as the defendant.

The case went to trial upon the plaintiff's substituted complaint, comprising one count, and an amendment to that complaint, comprising a second count. To these pleadings the defendant filed answers putting the plaintiff to his proof on all allegations except that which recites that the plaintiff is a real estate broker. At the trial the defendant by leave of court filed a counterclaim and set-off relating to the plaintiff's second count. For trial purposes, matters therein alleged were treated as denied by the plaintiff. In the interest of keeping the record in order for purposes of appeal, the plaintiff is directed to file a reply thereto which is to be dated and stamped as of June 18, 1947.

The following are the facts deemed determinative of the judgment to be entered: On May 17, 1946, the defendant in writing appointed the plaintiff her exclusive agent for a period of thirty days to sell certain real estate she owned on Scovill Street, Waterbury, together with certain tavern equipment, fixtures and furnishings therein located. The sales price specified was $20,000, with commission thereon of 5 per cent. At the end of the thirty days the plaintiff had not been successful in securing a purchaser. It was then agreed between the parties that the plaintiff continue his quest for a purchaser. He did so. On June 27, 1946, the plaintiff succeeded in having one George Broder submit a proposition of $19,000 for the purchase of the property. The defendant acepted the proposition. In the presence of the defendant and Broder and under their direction the plaintiff wrote out a memorandum which they signed. This memorandum acknowledges payment by Broder to the defendant of $500 "as a deposit" constituting "part of purchase price" in the amount of $19,000. The property to be conveyed is therein described along with reference to a purchase price mortgage of $9000. The memorandum further contains this clause: "On presentation of a good and sufficient title and deed within 30 days George Broder agrees to consummate this transaction otherwise this deposit wil be held as liquidated damages for taking property off the market, agent's commission and other expenses incurred." In securing Broder as a purchaser the plaintiff reasonably and in good faith believed that he would and could complete the transaction. Broder also expected to complete the transaction. The defendant could have conveyed a good title to Broder within the thirty days specified (and up to and beyond August 12, 1946) but the latter decided not to consummate the transaction and gave notice to this effect before the period expired. On August 12, 1946, Broder and the defendant executed what purports to be a mutual release wherein it is stated, among other things: "The said Louise Bock (defendant) is accepting the said $500 as liquidated damages. Each party hereby releases the other from any and all claims as of this date." A short time thereafter the defendant sold the property for $20,000 to a third party through the efforts of another agent, who was paid a commision of 5 per cent of the sales price.

On the facts recited the plaintiff is due a full commission from the defendant of 5 per cent of $19,000 with interest to date. This conclusion is based upon the law of this state as

expounded in *Leete* v. *Norton,* 43 Conn. 219, and *Meagher* v. *Reeney,* 96 Conn. 116. The opinion in the latter case sums up the situation here involved and states the answer thereto as follows (p. 117): "The single question of law raised by the appeal is whether a real-estate agent employed to procure a customer at a given price, has earned his commission when he procures a customer with whom his client enters into a bindng contract for the sale of the property, either on the terms originally fixed or upon others satisfactory to the vendor. Upon principle it would seem that a broker has fully performed his task when he brings the parties to an enforceable agreement, and in this case the agreement is one of which a court of equity might decree specific performance at the instance of either party. The case is practically controlled by *Leete* v. *Norton,* 43 Conn. 219, and in other jurisdictions the law is well settled. After the broker has produced a customer who professes to be ready, able and willing to buy the property on the terms fixed, it is, as was said in *Francis* v. *Baker,* 45 Minn. 83, 47 N. W. 452, 'for the principal then to decide whether the person presented is acceptable; and if, without any fraud, concealment, or other improper practice on the part of the broker, the principal accepts the person presented, either upon the terms previously proposed or upon modified terms then agreed upon, and enters into a binding and enforceable contract with him for the purchase of the property, the commission is fuly earned. The party presented is then a purchaser, within the meaning of the contract between the principal and the broker, although the sale is not completed or executed by payment of the consideration to the vendor'." In passing it may be said that if the controlling facts of both the *Leet* and *Meagher* cases were combined they would bear a remarkable resemblance to those in the case at bar in essential particulars. Rarely indeed does research reward the examiner by uncovering a pattern so identical in factual outline.

It has been noted that the plaintiff has proceeded under two counts. The first count is the one that alleges the theory of recovery that is in harmony with the recital of facts hereinbefore stated, unless paragraph 7 thereof alters the situation. It is there alleged that Broder "was financially able to consummate said sale of said property." The plaintiff made Broder his witness in support of this allegation. The man was not a co-operative witness. It was brought out, however, that Broder had assets of about $6700 at the time he executed the memorandum in question. The court limited the scope of the direct

examination in the belief that to permit a deeper inquiry might involve the financial affairs of the wife and brothers of the witness, into which counsel tended to penetrate. Even though it be found that Broder was financially unable to complete the transaction, this finding does not affect the plaintiff's right of recovery. The rule is stated thus in 8 Am. Jur. 1099, § 186: "Furthermore, a broker is not denied his right to commissions where the purchaser later is found unable financially to comply with the terms of the contract, unless the broker knew that the purchaser was unable to complete the contract or unless the employer relied wholly upon the broker's judgment as to the purchaser's financial ability." The exceptions to the rule are not factually present in the case. Hence, the general rule applies and controls. By the great weight of authority, financial inability of the purchaser or his deliberate refusal to perform are immaterial so long as the contract he entered upon is valid. See notes, 51 A. L. R. 1390, 1393 et seq.; 73 A. L. R. 926, 927. And the general rule is not affected even though the purchaser defaults for unknown reason. 51 A. L. R. 1392. So also, the subsequent release of the purchaser by the owner does not prevent the broker from recovering his commission when a valid contract has been entered into between owner and purchaser. 51 A. L. R. 1392.

Without further discussion, the issues are found for the plaintiff on the first count of his substituted complaint. The second count by way of amendment to the complaint, relating solely to the $500 alleged to have been received by the defendant for the use of the plaintiff, does not require consideration in view of the disposition of the first count. Hence the defendant's counter-claim and set-off directed to the second count is likewise removed from consideration.

Under the first count, judgment may enter for the plaintiff to recover of the defendant damages in the sum of $1,002.32 as follows: $950 (being 5 per cent of $19,000); $52.32 (being interest to date from August 12, 1946); totaling $1,002.32 in the aggregate. Costs attach in favor of the plaintiff as an incident of the judgment.