Hermine E. Schmidt, Appellee, v. Charles Sinclair, Trading as Brokers Finance Company, Appellant.

Gen. No. 45,217.

Opinion filed January 31, 1951. Rehearing denied February 20, 1951. Released for publication March 13, 1951.

CLARKE B. RICHIE and JULIAN C. RYER, both of Chicago, for appellants; JULIAN C. RYER, of Chicago, of counsel.

ARNOLD F. BERGER, of Chicago, for appellee; WILLIAM A. CAIN, of Chicago, of counsel.

MR. JUSTICE LEWE delivered the opinion of the court.

Defendant appeals from a judgment entered upon the verdict of a jury for $866.08 in an action to recover damages resulting from defendant's negligence in failing to procure collision insurance upon plaintiff's automobile in accordance with an alleged oral agreement.

The history of the transaction may be briefly stated. November 30, 1948, plaintiff sought a loan from defendant in the sum of $200. As security for the proposed loan defendant demanded a chattel mortgage on plaintiff's automobile and a collision insurance policy "showing loss to payee clause." Plaintiff executed a mortgage for $342.72 which represented the loan for

$200, the collision insurance premium of $112.70, and the remainder of $30.02 for finance charges. Defendant issued two checks both dated November 30, 1948, one for $200 payable to plaintiff and the other for $112.70 payable to plaintiff and C. M. Griffith, Inc., an insurance broker. After indorsing the check for the insurance premium plaintiff gave it to defendant who retained it for the purpose of paying the broker. Thereupon defendant delivered the $200 check representing the loan to plaintiff. December 12, 1948, plaintiff's automobile was involved in a collision which resulted in considerable damage to it. The collision insurance policy was not issued until December 29, 1948, about two weeks after the accident. The only witnesses called were plaintiff and defendant.

Plaintiff insists that defendant agreed to obtain collision insurance coverage on her automobile beginning November 30, 1948, when she signed the chattel mortgage. The gist of her claim is that as a result of defendant's negligence in not procuring the insurance she was obliged to pay for the repairs on her automobile and was deprived of the use of it for several weeks. Defendant argues that he was not acting as agent for plaintiff and that his retention of the check covering the insurance premium was merely an act of accommodation.

Plaintiff's testimony shows that at the time she asked for a loan defendant stated he would not grant it unless she obtained collision insurance. At the suggestion of plaintiff, defendant telephoned C. M. Griffith, Inc., with whom plaintiff had placed other insurance, and inquired about the premium. After the telephone conversation defendant told plaintiff he would "take care of the insurance," and informed her that the collision insurance policy was effective as of November 30, 1948. December 13, 1948, the day follow-

ing the collision, plaintiff had a conversation with defendant in which she told him about the accident and inquired about the insurance. Defendant suggested to plaintiff that she call the broker and "tell him that he could help me out in this particular collision insurance by letting me pay an extra thirty-day bill" to "back-date" the policy to cover the collision. Defendant testified that at the time the loan was made he informed plaintiff she would have to get her insurance through her broker; that he called plaintiff's broker in her presence and was informed what the insurance premium would be; that he did not deliver the check for the insurance premium to the broker until the policy was delivered. Defendant admitted having a telephone conversation with plaintiff after the accident, and stated that he told her that he had nothing to do with insurance and that she would have to get in touch with her broker.

Defendant further testified that insurance did not enter into the "protection of the security for this loan," and that he held the check for $112.70 after plaintiff had signed it and until the policy was delivered to him, which was about two weeks after the accident had occurred. ·

■■ We think the evidence warranted a finding by the jury that defendant promised to procure the collision insurance and pay for it with the check which he retained in his possession; that the policy was to become effective from the time the loan was made and that plaintiff relied upon defendant's promise. By keeping possession of the insurance check defendant precluded plaintiff from obtaining insurance herself. In our view defendant's promise to obtain collision insurance was not an act of accommodation but an integral part of the transaction. Under these circumstances defendant is liable for any loss sustained by

plaintiff. See *Evan L. Reed Mfg. Co. v. Wurts,* 187 Ill. App. 378.

The collision insurance policy issued to plaintiff by Trinity Universal Insurance Company, dated December 29, 1948, was offered in evidence. Defendant says that there was no showing that even if the policy had antedated the accident it would have covered the alleged accident. We think this contention is without merit. In his brief defendant has failed to point out any provisions which would have precluded plaintiff's recovery had it been issued before the collision occurred. It is a standard form with loss-payee clause, naming plaintiff as insured and Brokers Finance Company.

Finally defendant contends that there is no testimony showing that the repairs were necessary or the result of the collision. Plaintiff testified to the collision and that her automobile before the collision was "in very good condition"; and that the repairs were necessary. She offered the receipted bills of the Irving Parkside Service Station and Fine-Thomas Motor Sales, Inc. in evidence. Defendant argues that the receipted bills in and of themselves are not sufficient without some preliminary proof. In *Byalos v. Matheson,* 328 Ill. 269, where the same contentions were made as here, the court held that "proof of payment of the bill was prima facie sufficient." In the instant case, in the absence of contravening evidence, the jury was warranted in accepting the sum shown in the receipted bills as evidence of the real value of the repairs.

For the reasons stated, the judgment is affirmed.

*Judgment affirmed.*

BURKE, P. J., and KILEY, J., concur.