THE COUNTY OF DU PAGE, Plaintiff-Appellee, *v.* RICHARD J. KUSSEL, Defendant-Appellant.

(No. 72-81;

Second District—June 8, 1973.

David K. Anderson, of Skokie, for appellant.

William V. Hopf, State's Attorney, of Wheaton, (Edward J. Vertovec and James F. Campion, Assistant State's Attorneys, of counsel,) for the appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Plaintiff, the County of Du Page, filed a small claim complaint seeking $152.18 for sewer services allegedly rendered to defendant, Richard Kussel. The defendant counterclaimed for damages alleged to be the result of the surcharging of the plaintiff's sewer line, and sought an injunction to remove the sewer line from his property. A motion to dismiss the counterclaim was denied and the case was transferred to the general division of the court. The court, in a bench trial, found for the plaintiff on all issues and defendant appeals.

■■ We affirm that portion of the judgment below dealing with plaintiff's claim for sewer services. In defendant's answer to the plaintiff's complaint he alleged as an affirmative defense that he had acquired from plaintiff's predecessor in title an absolute right to sewer services for as long as he permits plaintiff to operate the line over his property. He then alleged that he has permitted plaintiff to operate the sewer line on his property since the time when it was first installed. This admission supports the county's claim for sewer services and it also answers defendant's contention that the sewer line over his property constitutes a taking of private property for public use without just compensation.

The issues raised by the counterclaim require more detailed discussion.

The sewer line in question runs in a north-south direction, and crosses the west part of defendant's property slightly west of defendant's swimming pool. Two manholes are on the property, one about 15 feet southwest of and 7 feet higher than the pool, and the other on lower ground at the north end of the property. Concrete flat work surrounds the pool. The flat work at the south end of the pool extends for about 7 feet and at its edge is a concrete curb about 4 inches high, on which there is a flagstone wall of 2-2½ feet in height. South of the wall is a garden that extends to the manhole cover. Defendant's house is northeast of the pool,

and immediately south of the house is a retaining wall. The damage claimed is to the pool and to the retaining wall.

While there is some reference in the testimony to damage to the property and repairs made by the plaintiff prior to 1964, the damages sought involve an alleged condition in June, 1964. At that time defendant's house was not being occupied, but defendant's brother-in-law, Otto Stephanie, was on the property on various occasions. At some time prior to June 15, 1964, he noticed brown water dripping from the sidewalk at the north end of the pool. There was water running from the south, coming through and over the flagstone, draining over the concrete slab, and running up and underneath the pool. He testified that as the water went around to the east side, it was running into the pool and water was all around the pool. The pool was lifted up and "cocked over", and was full of brown water. The concrete of the pool was bent and in several places it was raised or lowered from the flat work around the pool. There was a crack which extended all the way from the east to the west side of the pool. Seeking the source of the water, Stephanie found a hole in the ground with standing water in it south of the southern manhole. He raised the manhole cover and saw no water so he climbed down into the manhole. He used a flashlight to look south into the sewer pipe and saw it was stopped up with rocks and debris about 3 feet from the manhole, with one stream of water about the size of a pencil squirting from it.

The witness testified that he had been on the property some 4 or 5 days earlier, at which time the pool was in good condition. The pool was filled with water during his absence. He was not present when the water entered the pool and did not recall any rainfall during this period.

After completing his investigation, Stephanie telephoned defendant, who went to the property. He observed that the pool was on an angle and was full of sewer water, fecal matter and toilet paper which he said came from a rupture in the sewer just south of the southern manhole. The pool had been heaved, raised up, and cocked on the side adjacent to the sewer line, and there a terrible stench. He said that "hydraulic" pressure had forced the retaining wall south of the house to crack and push in toward the house. He found numerous cracks in the foundation of the house, with water going through. He further testified that he was on the property when plaintiff started repair work and that the sewer pipe was found to be broken or collapsed about 3 or 4 feet south of the southern manhole, which pipe was replaced by the plaintiff.

Defendant called Robert Hadley, the superintendent of Public Works of Du Page County, under section 60, who testified that his records

showed that there had been a break in the dropline to the north of the southern manhole in June of 1964. Rudolph Parker, an assistant superintendent of Public Works in Du Page County, also stated he was aware of repair work done in June of 1964.

Hadley testified for the plaintiff as a licensed civil engineer and land surveyor with training in hydraulics and soils. He said that in his opinion, and under the conditions testified to, the sewer surcharge would not create sufficient hydrostatic pressure to lift or raise a pool full of water. On cross-examination, he stated he did not know the weight of the swimming pool either full or empty. He said he knew the weight of water and of concrete, but he did not know how many cubic feet of water this pool held, nor the width or thickness of the concrete in the pool. He did not know the hydrostatic pressure created by the effluent going under the pool. He said the weight being lifted would not affect the amount of pressure necessary to lift that weight, and that with a pool full of water, if you put water outside of it, it would take the same amount of pressure to lift a pound as it does to lift a million pounds.

Richard Kussel, the defendant, testified that he had a bachelor of science degree in mechanical engineering and had training in hydraulics. It was his opinion that under the circumstances of this case, the hydrostatic pressure created by the effluent coming from the broken sewer line could have lifted the swimming pool filled with water the distance that it was lifted.

Defendant contends that plaintiff was guilty of negligence in the operation and maintenance of its sewer system upon defendant's property and that the court's finding to the contrary is against the manifest weight of the evidence. Defendant also contends that the doctrine of *res ipsa loquitur* should be applied to the case. Plaintiff argues that the trial court's finding that the county was free from negligence is not against the manifest weight of the evidence; and that the doctrine of *res ipsa loquitur* was not pleaded, not argued in the trial court, and in any event, is not supported by the record.

As material here, the counterclaim charged:

"3. Counterdefendant and its predecessors have been permitted for a long period of time to run and operate the sewer line in question in, over, through and across the property in question for a, long period of time under through and by virtue of a continuing, express, oral agreement that the Counterclaimant and his predecessors and his successors would and will be indemnified from any damages to the property in question resulting from the existence of said sewer line in, through, along, upon or across said property.

4. Commencing in about February, 1964, said sewer line running in, through, along, upon and across said property erupted on numerous occasions, causing, in each instance, great damage to the property in question and great damage to counterclaimant and his predecessors and successors.

5. As a direct and proximate result of the foregoing "wrongful acts and omissions" of the counterdefendant the property in question and the counterclaimant and his successor have sustained great damages in the sum of in excess of $50,000."

In order to rely on the principles of *res ipsa loquitur*, the pleadings must first be broad enough to support a charge of negligence. (*Sutcliff v. Fort Dodge Gas & Electric Co.* (Iowa 1934), 257 N.W. 406, 409.) Once finding that the pleadings support a negligence claim, *res ipsa loquitur* may be invoked only on a charge of general negligence, rather than on specific allegations of negligence. (*Erckman v. Northern Illinois Gas Co.* (1965), 61 Ill.App.2d 137, 144.) The essence of the doctrine and its consequences on the conduct of the trial place the burden on the counterclaimant to apprise the counterdefendant of his intent to rely on it by concise allegations in general terms. *Erckman v. Northern Illinois Gas Co.* (1965), 61 Ill.App.2d 137, 144-145.

An examination of the pleadings leads us to conclude that they are at best ambiguous. Paragraph 3 would appear to present a contract theory while paragraph 5 can be interpreted as an attempt to state a cause of action in negligence. However, the countercomplaint does not allege counterplaintiff's freedom from contributory negligence, which is a required pleading in a negligence action. In addition, the complaint nowhere refers to counterdefendant's acts as having been negligent, careless, lacking in due care or the like. Rather, the complaint refers to "wrongful" acts and omissions. The term "wrongful" has occasionally been equated to the term "negligent" (*Belmont v. City of New York* (N.Y. 1920), 182 N.Y.S. 173, 174), but generally has been considered a more comprehensive term, including criminal, willful, wanton, reckless, and all other acts which in ordinary course will infringe upon rights of another to his damage. (*Howard's Adm'r v. Hunter* (Ky. 1907), 104 S.W. 723, 724; *Judson v. People's Bank & Trust Co. of Westfield* (N.J. 1954), 110A.2d 24, 35. See generally, 46 Words and Phrases 495-498.) A breach of contract has, in proper circumstances, been considered a "wrongful act". (*Application of Chiappinelli-Marx, Inc.* (N.Y. 1961), 223 N.Y.S.2d 943, 945.) The "wrongful acts and omissions" referred to in the countercomplaint could well be interpreted as being the failure of counterdefendant to indemnify counterplaintiff pursuant to the agreement stated in paragraph 3. In any event, the pleadings are not suf-

ficiently concise to charge general negligence or to inform counterdefendant that plaintiff intended to rely on the doctrine of *res ipsa loquitur*.

Notwithstanding this conclusion, we keep in mind that the trial court denied a motion to dismiss the complaint and proceeded to trial. If the trial clearly proceeded on a negligence theory and if the counterdefendant would not be prejudiced by applying *res ipsa loquitur*, this court could on its own motion amend the pleadings to comply with the proofs. (Ill. Rev. Stat. 1971, ch. 110A, par. 362(f); see *Broberg v. Mann* (1965), 66 Ill.App.2d 134, 138.) We are not justified in taking this approach on the record before us. Counterplaintiff produced no evidence of negligence on the part of the county. At the close of counterplaintiff's case, counterdefendant moved for a directed verdict on the basis that the counterplaintiff failed to prove negligence or causation. Counterplaintiff responded that every element of its cause of action had been proved, stating that the evidence showed that the sewer line broke, that this caused the damage complained of, and that the damage was irreparable. Counterplaintiff did not state that the evidence established control and maintenance of the sewer line by the counterdefendant, that the occurrence was such as would ordinarily not happen but for counterdefendant's negligence, or that counterplaintiff was free from contributory negligence. In short, his response did not indicate that he thought himself to be proceeding under *res ipsa loquitur*. (See *Metz v. Central Ill. Electric & Gas Co.* (1965), 32 Ill.2d 446, 448-9; *Traylor v. The Fair* (1968), 101 Ill.App.2d 268, 274-5.) The court then asked the attorneys if negligence was the criteria that must be established. Counterplaintiff's attorney stated, "I don't think so". Counterdefendant's attorney did not answer on point. The court, in its memorandum opinion, gave as one of the reasons for its decision that the counterplaintiff failed to establish negligence on the part of counterdefendant.

■■ It appears that there was confusion as to the theory of the action in the trial court. This being true, we cannot say that counterdefendant would not be prejudiced by an amendment of the pleadings. We affirm the trial court's determination of this issue.

■■■ The final issue is whether an injunction should issue against plaintiff's future operation of its sewer upon defendant's property. Injunction is a proper remedy when an unlawful appropriation of land is attempted for the use of a public corporation which has not acquired the right of such appropriation by condemnation or otherwise. (*Springer v. City of Chicago* (1923), 308 Ill. 356, 364.) while a county has the authority to construct and maintain sewers and to acquire property for this purpose by purchase, condemnation, easement, etc. (Ill. Rev. Stat. 1971, ch. 34, pars. 3106, 3112.), there is no evidence that plaintiff has

availed itself of any of these methods. The only evidence tendered by the county in support of a right to maintain its sewer line on defendant's property absent defendant's continued consent is that the developer who originally installed the line, and from whom the county acquired it, agreed with the lot owner to the south of defendant to give him a free connection in exchange for the right of installation in the ground. This arrangement with another, however, does not give the county a right to remain on *defendant's* property. The consent defendant admits giving to operate the line on his property is revocable at any time. *City of Kewanee v. Otley* (1903), 204 Ill. 402, 413; *Kellum v. Village of Greenup* (1932), 265 Ill.App. 24, 26.

■■ We agree with the court in *Springer* that, to avoid public inconvenience, a reasonable time should be allowed the county to agree with defendant on the amount of compensation to be paid, or to condemn the property. We therefore order that unless the county agrees on the compensation to be paid and pays it, or begins a condemnation proceeding within 60 days, a perpetual injunction will issue against the county's occupying or using the property.

Taken with the case was plaintiff's motion to strike defendant's brief, or a portion thereof. We have, in our discretion, considered only those portions of the brief which are in conformity with the Supreme Court Rules, and deny the motion.

We affirm the judgment below as it relates to plaintiff's complaint for sewer services and defendant's counterclaim for damages. We vacate the order denying the injunction and remand with directions that the trial court proceed on the motion for an injunction in conformity with this opinion.

Affirmed in part; vacated and remanded in part with directions.

GUILD, P. J., and T. MORAN, J., concur.