ALBERT WOLFENBERGER, Plaintiff-Appellee, *v.* GEORGE A. MADISON *et al.*, Defendants-Appellants.

Second District (2nd Division)    No. 75-414

Opinion filed November 17, 1976.

Rissman & Jenkins, of De Kalb, for appellants.

Ralph A. Ketchum and John E. Dreyer, both of Dryer, Foote & Streit, of Aurora, for appellee.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

Plaintiff, a real estate broker, received a jury award in the amount of

$33,982 as brokerage commission for his efforts to sell the defendants' 170-acre farm.

On appeal, the defendants assert that they are not liable for the commission because plaintiff never presented them with a buyer who was ready, willing and able to purchase their farm on the terms defendants claim to have made part of the employment contract between broker and seller. They further claim that the prospective purchaser was never bound to seller by any legally enforceable contract (asserted to be a necessary precedent to the earning of plaintiff's commission). In connection with these points, defendants assert error in the trial court in the submission of certain instructions and the refusal of others. Defendants also assert that, under the rule of curative admissibility, they were unduly and prejudically restricted in their presentation of testimony. Defendants maintain, too, that there existed a fiduciary duty on the part of the broker to advise defendants of the tax advantages of the trade rather than a sale and, apparently, a duty to include in the employment agreement a contingency for a trade rather than a cash sale. The breach of this duty, defendants claim, precludes plaintiff from recovering a commission.

In support of their claim that the broker never produced a buyer bound by an enforceable contract, the defendants have moved this court for leave to amend their pleadings to include the defense of the Statute of Frauds. (Ill. Rev. Stat. 1973, ch. 59, par. 1 *et seq.*) The record reveals some evidence regarding defendants' theory of the case which could be considered to raise such statute, and we, therefore, allow the motion to amend the pleadings to conform to the proof.

In late February of 1971, Mr. Madison and his father contacted plaintiff, saying that they had a good offer for their farm and were interested in buying a larger farm. That same day, plaintiff showed the defendants two farms but, plaintiff states, there was no discussion regarding trading farms. Later that afternoon, Mr. Madison informed the plaintiff that the offer he had on his farm was for $2700 per acre. Thinking that offer too low, plaintiff advised defendants that he believed he could get $4000 per acre for their farm if he had some time to work on it, and he asked defendants for a six-month exclusive listing to allow him to do so. The defendants initially refused and, instead, entered into a three-week exclusive listing with another broker, Andresen. The written contract with Andresen ran during May, 1971, and was expressly contingent upon a trade being effected for another suitable farm. As the property was not sold by Andresen within that period, defendants again spoke with plaintiff who explained that he felt he could get the $4000 per acre by having the farm annexed to the city of Sycamore, and that he would work on it if they would grant him the six-month exclusive listing. The

defendants agreed and signed the listing contract of May 26, 1971, which, by its terms, gave plaintiff a six-month exclusive right to sell the subject farm at a price of $4000 per acre at a commission of 5%. Approximately one-half year later, the defendants signed another six-month exclusive listing agreement on the same terms as above. Neither agreement mentioned that plaintiff's commission was to be contingent upon plaintiff finding a suitable, larger farm in trade for the subject property. Defendants testified that, at the time each of the agreements was signed, they specified to plaintiff that they did not want to sell without such a trade, but that plaintiff did not set out such condition in writing because, he said, it was unnecessary inasmuch as they were friends and he knew what they wanted. Plaintiff denies that such conversations took place.

In January, 1971, plaintiff conveyed to defendants three separate oral offers from a prospective purchaser, Mrs. Harbecke. In the third of these offers, Mrs. Harbecke agreed to purchase the farm for $4000 per acre. Subsequently, defendants apparently asked the prospective purchaser if they would be allowed to live on the farm rent free for a period of a year. Mrs. Harbecke indicated that defendants could remain in possession but rent would be due during their tenancy. Thereafter, plaintiff made recurrent attempts to have the defendants and Mrs. Harbecke meet for the purpose of signing a sales contract. According to plaintiff, defendants were repeatedly unavailable for reasons such as Mr. Madison was going out of town to check his seed corn, he was working on his income tax, he was moving snow, or Mrs. Madison had something planned for him to do around the home. At trial, defendants asserted that they did not meet the prospective buyer because the $4000 sales price, in absence of property in trade, was not acceptable to them for tax reasons. It was established at trial that defendants later granted the other broker, Andresen, an exclusive listing to sell this farm for $4000 per acre and that the property was actually sold by him at this price. Defendants assert that this sale involved a trade.

■■ Mrs. Harbecke's uncontradicted testimony at trial indicated that, at all times relevant, she was ready, willing, and able to purchase the subject property. The rule in Illinois is that a broker earns his commission when he produces a buyer ready, willing and able to purchase the property. (*Fox v. Ryan* (1909), 240 Ill. 391, 396.) A prospective purchaser will be considered ready and willing if he accepts the property on the terms offered by the seller and remains continuously willing to purchase during the relevant negotiations. (*Garrett v. Babb* (1975), 24 Ill. App. 3d 941, 946.) A prospective purchaser's uncontradicted testimony that he was ready, willing and able to purchase the property makes a *prima facie* case that the broker earned his commission. (*Robertson v. Reed* (1976), 35 Ill. App. 3d 525, 527-28.) Implicit in the jury award herein is the jury's finding

that the sellers' terms were $4000 per acre and that a trade contingency was not part of the listing contract. On appeal, this court may not disturb a jury's finding unless it is against the manifest weight of the evidence. Here, the record clearly shows that the sellers' terms were $4000 per acre, and, since the broker produced a buyer whose uncontradicted testimony indicates she was ready, willing and able to purchase the property on those terms, the broker made a *prima facie* case that his commission was due him.

Defendants assert that, based on the case of *Wilson v. Mason* (1895), 158 Ill. 304, there is a further condition precedent to the earning of a broker's commission: that the buyer must be bound to the seller by an enforceable contract. It is uncontroverted that no written offer or contract of sale was signed by the prospective purchaser. From this fact defendants argue that the prospective buyer was not bound to defendant by a valid and enforceable contract in writing, and could have, had she wished, successfully raised the Statue of Frauds to defeat any mere oral contract formed.

There is clearly dicta in the *Wilson* case (158 Ill. 304, 311-12 and 313-14), which supports the defendants' latter proposition, but, as has been recurrently pointed out in cases since *Wilson*, that case did not deal with a seller whose own fault prevented the consummation of the sale. When the seller is at fault, the rule announced in *Wilson* is inapplicable. (*Scott v. Stuart* (1904), 115 Ill. App. 535, 540; *Caruthers v. Reesor* (1907), 134 Ill. App. 370, 372; *Davis v. Pauler* (1912), 170 Ill. App. 317, 321-22; *Nudelman v. Fish* (1913), 181 Ill. App. 507, 508.) In *Schulte v. Meehan* (1907), 133 Ill. App. 491, 500, the court carefully separated the dicta from the holding in *Wilson v. Mason*:

> "In that case the agent or broker claimed to have procured, as purchasers, the executors of the will of one Alfred Cowles, and claimed commissions for securing such proposed purchasers. There were two executors, and one of them signed, in his own name, as executor, a written agreement to purchase, and signed, also, the name of the other executor by him. There was no proof that the executors had any power under the will to purchase land for the estate, nor any proof that the executor who signed had written authority to sign for his co-executor. *The* [Wilson] *court held, in substance,* that there being no proof that the executors were empowered by the will to purchase land, *the broker had not procured purchasers who were able to purchase, and, therefore, he was not entitled to recover. No case has been cited in which it has been held that an agent employed to procure a purchaser for property * * * cannot recover commissions in the absence of a*

*valid and enforceable written contract between the vendor and proposed vendee * * *."* (Emphasis added.)

■■ This court has recently approved the proposition that an executed written agreement need not be entered into, because the seller becomes bound at the moment his terms have been met. (*Garrett v. Babb* (1975), 24 Ill. App. 3d 941, 944.) We therefore hold, as did the court in *Schulte v. Meehan* (1907), 133 Ill. App. 491, 499, that the trial court properly refused the sellers' jury instruction which said that a broker's commission is not earned unless an enforceable contract in writing has been effected. *Schulte v. Meehan* (1907), 133 Ill. App. 491; *Hersher v. Wells* (1902), 103 Ill. App. 418, 421.

■■ Defendants argue that error was committed by the refusal of the following additional instruction.

"[Defendants] affirmatively allege [that they] were induced to sign the exclusive listing agreement by plaintiff's statement that it was not necessary to include the exchange terms therein."

This instruction implied fraud in the inducement on the part of the broker. In the absence of proper pleading or proof of fraud, this instruction was properly refused by the court.

■■ Because testimony elicited from Mr. Madison under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 60) revealed that the defendants had previously listed their property with broker Andresen, the court (apparently under the doctrine of curative admissibility) admitted otherwise excludable testimony. Mr. Madison and broker Andresen were allowed to testify to the effect that the $4000 per acre and the trade terms were part of the original listing agreement with Andresen (the agreement entered into prior to that which was signed with plaintiff) and that Andresen eventually sold the property. Defendants nevertheless insist they were unduly restricted in their presentation of evidence relative to their having always wanted a trade, and that the written agreement under which Andresen eventually sold the farm was contingent upon a suitable trade. It is unclear from defendants' brief what testimony or other evidence they felt had been improperly restricted. The trial court refused to admit the document of the prior listing with Andresen but we fail to see any prejudice resulting from this restriction since the terms of that agreement—including the trade—were fully testified to. Moreover, defendants were permitted to fully argue to the jury their theory that they always wanted a trade. We, therefore, reject defendants' argument that they were unduly restricted in presenting evidence.

The final issue raised by defendants is that plaintiff, as defendants' agent, owed defendants a fiduciary duty to disclose all material facts which might affect the transaction, and that such duty was not honored,

plaintiff having failed to inform defendants of the tax advantages of trading, rather than selling, their farm. This issue was not raised by defendants at trial or in their post-trial motion, and may not be considered for the first time on appeal. Furthermore, a real estate broker who counseled seller on the tax consequences of various forms of property transfer would most certainly be engaged in the unauthorized practice of law. See generally *Chicago Bar Association v. Quinlan & Tyson, Inc.* (1966), 34 Ill. 2d 116.

For the above reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

RECHENMACHER and DIXON, JJ., concur.