WHEATON NATIONAL BANK, Plaintiff, *v.* JAMES W. DUDEK *et al.*, Defendants and Third-Party Plaintiffs-Appellees.—(FOREMOST INSURANCE COMPANY *et al.*, Third-Party Defendants and Fourth-Party Plaintiffs-Appellants; ROBERT GRAHAM *et al.*, Fourth-Party Defendants.)

First District (1st Division)   No. 76-597

Opinion filed April 24, 1978.

Crooks, Gilligan & Kages, of Chicago, for appellants.

Michael Dudek, of Chicago, for appellees.

Mr. JUSTICE McGLOON delivered the opinion of the court:

This is an appeal from a judgment in favor of James and Angela Dudek and against Robert Graham and Robert Graham Insurance Agency for damages sustained as a result of Graham's alleged negligence in failing to obtain insurance upon two snowmobiles and a trailer owned by the Dudeks.

On appeal Graham argues (1) that the terms and conditions of the Dudeks' alleged contract of insurance were not proved at trial and thus the Dudeks may not claim the benefits of such a contract; (2) that the instant case is a case in malpractice and the Dudeks failed to introduce any testimony concerning the applicable standard of care in the profession; and (3) that the proper measure of damages is the fair market value of the items immediately before the loss and the Dudeks failed to introduce any evidence on that issue.

We affirm.

The testimony at trial established that on December 21, 1972, James Dudek purchased two snowmobiles and a trailer for transporting the snowmobiles for a total purchase price of $2,862. The testimony further indicated that on February 20, 1973, Dudek met with Robert Graham of the Graham Insurance Agency and discussed insuring the above items. At that meeting Dudek filled out an application for a $25,000 policy for liability, comprehensive and collision insurance to the Foremost Insurance Co., Inc. (hereinafter referred to as Foremost), and wrote a check for $120 payable to the Foremost for the premium. Dudek testified that Graham told him on February 20, 1973, he was insured and that the check for $120 was for the entire year's premium. Graham denied telling Dudek that he was insured as of that date.

On February 26, 1973, the snowmobiles and trailer were stolen in front of the Dudeks' home. James Dudek testified that he went to Graham's office the following day and informed Graham of this fact and that Graham again told him the items were insured. Supportive of the above testimony is that of James Dudek's wife, Angela, who testified that on approximately February 27, 1973, Mr. Graham's secretary called her and informed her that her husband had just left Mr. Graham's office. During that telephone conversation, the secretary informed Mrs. Dudek not to worry about the snowmobiles because they were covered completely.

On or about February 28, 1973, Graham received a letter from Foremost advising that in order to obtain a policy covering physical damage, the coverage had to be upgraded to $100,000. Graham testified

that the letter was his first knowledge of such a requirement on Foremost's part. With Dudek's consent, Graham prepared a new application bearing the date February 20, 1973, and resubmitted it along with a check for the premium. On March 9, 1973, Foremost advised Graham that he had paid the gross premium ($136.85) and that upon receipt of the net premium ($131.75) a policy would be issued. Graham testified that the first time he told Dudek he was covered was after the March 9, 1973, communication with Foremost. Although Graham issued a check for the net premium, Foremost returned all the papers and rejected coverage on November 1, 1973.

After hearing all of the evidence, the trial court found for the plaintiffs and against the defendant in the amount of $2,662, the cost of the two snowmobiles and trailer, less a $50 deductible on each item.

■■ Defendant first argues that to recover the benefits of a contract for insurance, plaintiff must prove the terms and conditions of that contract. Although that may be true, what is at issue here is not a contract of insurance, but a contract to procure insurance and we believe the essential elements of a contract to procure insurance were proved in the instant case. As indicated in *Gothberg v. Nemerovski* (1965), 58 Ill. App. 2d 372, 383, 208 N.E.2d 12, 18-19:

> " 'It is sufficient if one of the parties to such a contract proposes to be insured and the other party agrees to insure, and the subject, the period, the amount and the rate of insurance are ascertained or understood and the premium paid if demanded.' (*Cottingham v. National Mut. Church Ins. Co.*, 290 Ill. 26, 32, 124 N.E. 822 (1919).)"

Also, preliminary contracts to insure may be proved by parol as well as written evidence. (*Pimentil v. Milo Brooke, Inc.* (1956), 11 Ill. App. 2d 201, 136 N.E.2d 608.) When Dudek's testimony is considered together with the written application, all of the above prerequisites to procure insurance were proved in the instant case.

■■ An agent owes an applicant for insurance the duty to act with reasonable promptness on the application either by providing the applicant with the desired coverage, or by notifying the applicant of the rejection of the risk so that the applicant may not be lulled into a feeling of security, or put to prejudicial delay in seeking protection elsewhere. (*Talbot v. County Life Insurance Co.* (1973), 8 Ill. App. 3d 1062, 291 N.E.2d 830.) Furthermore, in *Gothberg v. Nemerovski* (1965), 58 Ill. App. 2d 372, 208 N.E.2d 12, we held that where there exists a contract to procure insurance between an agent and an applicant and the agent represents to the insured that insurance is in effect, the agent has a duty to procure the requested coverage.

■■ The trial court's judgment in favor of the Dudeks is supportable under either of the above theories. From the evidence presented, the trial court could have concluded that Graham was negligent in submitting the wrong coverage and that such negligence proximately caused the injury to Dudek. The trial court could also have believed the testimony of Dudek that Graham told Dudek he was insured on February 20. Under *Gothberg,* Graham then had a duty to procure such coverage. In not procuring the insurance before the theft, Graham violated this duty and proximately caused the Dudeks' injury.

■■ Graham further contends that the decision of the trial court should be reversed because the instant case is one of malpractice and plaintiffs failed to present any expert testimony concerning the relevant standard of care. We disagree. As previously indicated, *Gothberg v. Nemerovski* (1965), 58 Ill. App. 2d 372, 208 N.E.2d 12, indicates that an agent or broker who represents to an applicant that the applicant is insured has a duty to procure such insurance and is liable for any damages caused by the failure to do so. Those are the facts of this case and under *Gothberg* expert testimony is unnecessary to establish a standard of care. Furthermore, although our research has disclosed no Illinois case on point, cases from other jurisdictions involving an agent's failure to procure insurance indicate that expert testimony establishing a standard of care is unnecessary. *Consolidated Sun Ray, Inc. v. Lea* (3d Cir. 1968), 401 F.2d 650; *Lowitt v. Pearsall Chemical Corp.* (1966), 242 Md. 245, 219 A.2d 67.

■■ Graham finally contends that the fair market value of the property immediately before the loss is the proper measure of damages and that Dudek failed to present any evidence of such fair market value. The proper measure of damages for the breach of a contract to procure insurance is determined by the terms of the policy which the broker failed to procure. (*Gothberg v. Nemerovski* (1965), 58 Ill. App. 2d 372, 208 N.E.2d 12.) Generally, the measure of damages is determinable from the contract of insurance. (*Morreale v. National Fire Insurance Co.* (7th Cir. 1962), 298 F.2d 96.) In the instant case no contract of insurance was ever procured and it is impossible to determine from the application itself the measure of damages agreed upon apart from the $50 deductible on each of the three items. Under such circumstances we agree that the proper measure of damages is the fair market value of the items immediately before the loss. However, we believe the evidence presented sufficient proof of such fair market value. The items were purchased new and the loss occurred approximately two months after the purchases. There is no evidence indicating that the items were ever used or damaged, rather the plaintiff introduced evidence of the cost of the stolen merchandise. We

believe that the fair market value of the items immediately before the loss approximates their purchase price, and see no error in the amount of damages awarded by the trial court.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

GOLDBERG, P. J., and O'CONNOR, J., concur.